Earl CHRONISTER, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of
Health, Education and Welfare,
Defendant.

No. 1726.

United States District Court
W. D. Arkansas,
Fort Smith Division.

Dec. 11, 1963.

Warner, Warner, Ragon & Smith, by James T. Dyke, Fort Smith, Ark., for plaintiff.

Charles M. Conway, U. S. Atty., E. A. Riddle, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

Plaintiff seeks review of a final decision of the defendant Secretary denying disability benefits under the Social Security Act, 42 U.S.C.A. § 401 et seq. This court has jurisdiction of the action pursuant to Sec. 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g).

Plaintiff first made application for disability benefits October 8, 1958. That application was denied and he did not appeal.

The application for disability benefits and to establish a period of disability now before the court was filed by the plaintiff on April 15, 1960. This application was disallowed on September 14, 1960; a request for reconsideration was filed on October 14, 1960, and the Bureau on June 30, 1961, notified the plaintiff by letter that earnings requirements had been met but further action was needed to determine whether the plaintiff had met the disability requirements; on November 1, 1961, the plaintiff was notified by letter that he did not meet the earnings requirements; the plaintiff on February 2, 1962, requested a hearing which was held on August 14, 1962; the hearing examiner, Samuel C. Berson, denied the application on August 31, 1962; the plaintiff's request for review was denied

by the Appeals Council on March 6, 1963; thus the hearing examiner's decision became the final decision of the defendant Secretary.

This action was commenced by plaintiff on May 3, 1963, after having exhausted all administrative remedies, and the defendant Secretary filed his answer together with a transcript of all administrative proceedings on August 23, 1963. On September 17, 1963, plaintiff filed motion for summary judgment and submitted brief in support thereof.

The court on November 15, 1963, addressed a letter to the attorney for the plaintiff and the United States Attorney in which it was stated:

"The Secretary has not filed a brief, and this is to advise that the business of the court is such that I cannot delay action on these matters any longer. I am today beginning consideration of the record and shall dispose of the case in accordance with what appears to be required by the facts and the law.

"Should either party desire to submit additional briefs, you may do so, and they will be considered if they reach the court prior to the time the court completes its consideration."

To date the court has heard nothing further from the United States Attorney, and the case is now before the court upon the record, the memorandum brief of the plaintiff and his motion for summary judgment. The fact that motion for summary judgment for defendant has not been filed and brief in support thereof has not been submitted has not militated against the defendant in the least, as the court has carefully considered all the evidence in an effort to determine whether the Secretary's findings and conclusions are supported by substantial evidence.

The defendant in his answer contends that the findings and conclusions that the plaintiff did not meet the earnings requirements and is physically capable of engaging in substantial gainful activity are supported by substantial evidence.

There is no dispute as to the pertinent facts relative to the plaintiff's non-medical history. He was born in Lamar, Arkansas, on July 8, 1898. He attended school at Minnow Creek, Arkansas, and completed the ninth grade. Until 1942 the plaintiff had been a farmer when he then was employed in Detroit, Michigan, as a steel handler in the Roter Electric Steel Mill. He next worked at the Detroit Tank Arsenal for about fourteen months as a drill press operator. When the war ended, he returned to Roter Steel. He next worked on a farm near Clarksville, Arkansas. For a year he sharecropped on a farm at Marked Tree, Arkansas. He then returned to Detroit, Michigan, and worked as a night watchman in a manufacturing plant for a year. He next farmed near Marked Tree, Arkansas, for two years. In 1953 he went to Fort Smith, Arkansas, and worked in a frozen food plant for a year. He then worked at the Goldman Hotel in Fort Smith, Arkansas, for approximately four months as a dishwasher. He next worked for William Patterson and Son in 1954 or 1955 as a painter. He also worked as a painter on jobs he contracted himself. On July 30, 1959, the plaintiff fell about 40 feet while painting an outdoor movie screen at Poteau, Oklahoma.

Plaintiff was examined by Dr. M. A. Accinno on the day of his fall when he was admitted to St. Edwards Mercy Hospital, Fort Smith, Arkansas. Dr. Accinno in his report of that date notes the plaintiff fell about 40 feet, and states his diagnosis as follows:

"*Working Diagnosis:* Comminuted fracture of right femur, extending from the greater trochanter and to the middle third of the femur.

"2. Comminuted fracture of the left pelvis, ischium and pubis, rami of both, in good position."

Plaintiff was hospitalized from July 30, 1959, until September 11, 1959, under Dr. Accinno's care. On October 21, 1959, the plaintiff was readmitted to St. Ed-

wards Mercy Hospital and Dr. Accinno made the following entries on the hospital records:

"*History and Physical Examination:* Patient returns for bivalvement of cast and x-ray to determine amount of healing.

\* \* \* \*

Head and Neck: Freely movable.

Eyes: Pupils round and equal, react to light and accommodation.

Chest: Symmetrical. Breath sounds clear.

Heart: Tones normal. No irregularity, no murmurs.

Abdomen: Soft, no tenderness in pelvic area. Fracture of left pubis previously seen, healed.

"X-rays show very little callous formation, but clinically the leg is firm, therefore will attempt to leave patient out of cast and permit to roll around in bed and do muscle exercises of quadriceps of the right lower extremity. Swelling moderate about ankle and knee."

Plaintiff entered St. Edwards again in December 1959 for four days of physiotherapy.

On May 4, 1960, Dr. Hoyt Kirkpatrick, an orthopedist of Holt-Krock Clinic, Fort Smith, Arkansas, examined the plaintiff. Dr. Kirkpatrick in his letter of May 4, 1960, stated:

"Mr. Chronister describes multiple segmental fractures of the right femur and intertrochanteric fragment of the right hip, multiple fractures of the pelvis apparently with a diastasia of the right sacroiliac joint, and of the symphysis pubis. He was treated by supracondylar skeletar traction for six weeks, following which a hip spica cast was applied for another six weeks. He states that the cast was then removed and he was placed on physical therapy for a short interval. He has been walking on crutches since. He describes shortness of the leg, severe pain and instability in the upper third of the thigh, extreme limitation of motion of the hip and knee and constant pain in the trochanteric area of the femur. He states that he is unable to bear weight on the leg except with the aid of two crutches and he came into the office walking on two crutches.

"Examination shows almost a 2″ shortening of the leg of which I cannot be sure because of flexion deformity of the knee. The knee extends to 150° and flexes to about 100°. A definite block occurs at this time. The knee ligaments appear to be intact. There is tenderness present in the palpable fracture of the upper third of the femoral shaft. I cannot be positive on clinical examination, but I felt that motion might be palpated."

Plaintiff was next examined on June 7, 1960, by Dr. W. E. Knight of the Holt-Krock Clinic, Fort Smith, Arkansas. Dr. Knight advised this plaintiff to begin walking and "gradually get off his crutch."

Plaintiff was next examined by Dr. Hoyt Kirkpatrick of the Holt-Krock Clinic, on January 7, 1961, and August 2, 1961. Dr. Kirkpatrick in his letter of August 3, 1961, to the Arkansas Rehabilitation Service stated:

"He complains of constant soreness and pain in the low back and in the right side of the pelvis radiating into the right sacro-iliac joint. In addition, he complains of pain about the back of the sacrum and in the right thigh as far down as the knee. His latter pain is the chief complaint. His pain is relieved by rest and his complaints are all increased by weather change, by ordinary walking, stooping or lifting.

"Physical examination shows him to walk with a distinct limp in the right leg and shows he gets about with the aid of a cane. A very marked external rotation of the right lower extremity is noted; a measurable shortening of 2″ clinically is noted in the right lower extremity as compared with the left. This shortening causes a marked tilt of the pelvis with a functional scoliosis of the entire spine. Reflex muscle spasm of the paravertebral musculature is noted. A positive Gaenslen and Patrick sign is present on the right side. Restriction of motion of the low back is present in all directions. Pelvic compression causes pain referred to the right sacro-iliac region.

"The neurological examination of the lower extremities is negative. There is limitation of motion of the right knee of 80° when compared with 130° in the left knee. There is some limitation of motion of the right hip of 130° as compared with 150° of the left hip. There is a marked limitation of external rotation in the right hip. The right knee has a flexion contracture of 20°. There is 2″ atrophy of the right thigh and 2½″ atrophy of the right calf as compared with the left at the identical levels. A marked diminution of the deep tendon reflexes of the right heel cord and patella is noted. A right inguinal hernia is present.

"It is by feeling this patient sustained severe multiple injuries from which he is disabled. These injuries consist of (1) right inguinal hernia; (2) a severe comminuted fracture of the upper third of the shaft of the femur healing in deformity and shortening; (3) fractures of the right side of the pelvic involving the rami of the pubis and the right sacro-iliac joint healing in distortion of the pelvis and sacro-iliac joint; (4) contusion and spraining injuries of the lumbar spine; (5) possible sciatic nerve injury. This may be the cause of the marked atrophy which he has. The findings of the x-rays are listed in the diagnoses above. Additional readings will be sent should you desire. I consider that there is no question as to his disability."

In a statement made under oath on April 16, 1963, and attached to the plaintiff's motion for summary judgment, Dr. Clarence L. Glenn of the Holt-Krock Clinic, Fort Smith, Arkansas, made the following statements with respect to the permanency of the plaintiff's condition:

"At the present time, patient is complaining of pain in the left lower abdomen radiating around the side of his hip into the buttock area. He walks with a limp due to shortening of his right lower extremity which is also atrophied. Patient also has a right inguinal hernia. Since his last examination in February, 1961, this man has developed a numbness in the dorsum of his left hand involving the middle, ring and little fingers and has a flexion contracture of the little finger on either hand and to a slight degree on the ring finger on the left hand.

"Physical examination on this date reveals the patient to walk with a distinct limp in the right leg and he gets about with the aid of a cane. There is marked external rotation of the right lower extremity and it measures about two inches shorter than the opposite member. There is a marked tilt of the pelvis of course, with a functional scoliosis of the entire spine. There is restriction of motion in the lower back in all directions, with a positive Gaenslen's and Patrick's sign on the right side. Pelvic compression causes pain referred to the right sacro-iliac area. Neurological examination of lower extremities is negative. There is limitation of motion of the right knee of 90 degrees as compared with 130 degrees of the left knee. There is limitation of mo-

tion of the right hip of 130 degrees as compared with 150 degrees in the left hip. There is marked limitation of external rotation of the right hip. The right knee has a flexion contracture of 20 degrees. There is two inches of atrophy of the right thigh and two and one half inches atrophy of the right calf as compared with the left at identical levels. There is marked diminution of the deep tendon reflexes of the right heel cord and the patella. A large right inguinal hernia is present which is reducible. There is no evidence of hernia on the left. His heart and lungs are negative to examination. His abdomen is negative except for the hernia as noted above.

"It is my impression that this patient received severe multiple injuries due to his accident in 1959, from which he is totally and permanently disabled. These injuries consist of the following: 1. Right inguinal hernia, reducible, large. 2. Severe comminuted fracture of the upper third of the shaft of the right femur, healing in deformity and shortening. 3. Fractures of the right side of the pelvis involving the rami of the pubis and sacro-iliac joint. 4. Contusion and sprain injuries of the lumbar spine. 5. Possible sciatic nerve injury which may be because of marked atrophy which he now has. 6. Dupuytrens contraction of both hands involving chiefly the little finger of each hand and to a lesser extent the ring finger of the left hand.

"The pain which the patient is now experiencing in his left lower quadrant of the abdomen and back may be due to strain on his lower back as a result of the two inch shortening of his right leg. It may also be related to the right inguinal hernia, if this hernia contains a loop of the sigmoid colon causing nerve stimulation of the peritoneum in the left lower quadrant of the abdomen.

"At any rate, this man is considered by me to be totally and permanently disabled and worthy of any consideration that may be afforded him."

As to the plaintiff's earnings requirements, the defendant Secretary certifies 19 quarters of coverage on July 30, 1959. The plaintiff contends that he is entitled to two additional quarters because no credit was given for any quarters in 1958 and no credit was given for the second quarter in 1959.

The plaintiff contends he worked for William Patterson as a painter in 1958 for about two weeks painting a church. Patterson who is now dead reported no wages paid to plaintiff in this period. A fellow employee of plaintiff executed a form prepared by defendant in which he stated the following:

"I hereby certify that I worked with Earl Z. Chronister at Booneville, Ark., painting and 2½ weeks sandblasting a church house, appr. $175.00, and also worked with him at Ward Ice Company for 4 weeks. We worked for William T. Patterson and Son. He averaged $50 per week. This is for the year 1958.

/s/ Eddie Harris
R. #1, Box 157
Muldrow, Okla."

Patterson also painted a building rented to Border City Ice and Cold Storage Company in 1959. A letter from the company appears in the transcript at page 113, in which it is stated:

"This is to state that Mr. Earl Z. Chronister was employed by William T. Patterson and Son as a laborer during the second quarter of 1959.

"William T. Patterson and Son were contractors who sand blasted the interior walls of a building rented to Border City Packing Company and spray painted same.

Yours very truly,
BORDER CITY ICE & COLD
STORAGE CO.
By /s/ Duane Sorrels
Duane Sorrels, Engineer"

The only issue before the court is whether there is substantial evidence in the record to support the decision of the defendant Secretary.

■ The findings of fact made by the hearing examiner are conclusive if supported by substantial evidence, Celebrezze v. Bolas, (8 Cir. 1963) 316 F.2d 498. Conclusions of law made by the hearing examiner are entitled to great weight, but such conclusions of law are not binding upon the court, Blanscet v. Ribicoff, (W.D.Ark.1962) 201 F.Supp. 257. A majority of courts also extend the finality of the hearing examiner's findings to inferences and conclusions which he draws from the evidence if there is substantial basis for the conclusion, Hawkins v. Celebrezze, (W.D.Ark. 1962) 210 F.Supp. 341; Morris v. Ribicoff, (W.D.Ark.1961) 194 F.Supp. 841.

The applicable statutes and regulations require a medically determinable physical impairment, 42 U.S.C.A. §§ 416(i) (1), 423(c) (2), which can be expected to continue for a long and indefinite period of time, 20 C.F.R., Sec. 404.1502 (f), of such extent as to prevent a person so impaired from engaging in any substantial gainful activity before disability can be granted.

There is no doubt that the plaintiff has a medically determinable physical impairment verified by objective findings that will be of permanent duration. The critical question is whether this medically determinable impairment is of such magnitude so as to prevent the plaintiff from engaging in any substantial gainful activity. The plaintiff's history and the nature of his affliction as evidenced by the medical reports herein amply demonstrate that his impairment is permanent and of indefinite duration. The examination by Dr. Glenn, made two years subsequent to the plaintiff's accident, corroborates the plaintiff's contention that his affliction is permanent.

■ The opinions of the medical experts are certainly not conclusive as to whether the plaintiff can engage in substantial gainful activity, but are at least some evidence of the restriction on the plaintiff's activities because of his physical condition. See Jones v. Celebrezze, (6 Cir. 1963) 321 F.2d 192.

■ The plaintiff sustains his burden of proof under the Act when he produces evidence that shows his physical disabilities, education, experience and inability to engage in substantial gainful activity in the future. Jones v. Celebrezze, supra. The Act does not require a plaintiff to be totally helpless or bedridden to be entitled to disability benefits. Hawkins v. Celebrezze, supra; Park v. Celebrezze, (W.D.Ark.1963) 214 F.Supp. 153. The plaintiff is not obligated under the Act to introduce evidence which negates every imaginable job open to men with his impairment, age, lack of education and experience. It is quite enough if he offers evidence of what he has done in the past, of his inability to perform that type of work in the future, and his lack of particular experience for any other type of work. If there are other kinds of work which are available and for which the plaintiff is suited, it is the defendant's burden to adduce evidence from which a finding could be made that he can do some type of available work, Hodgson v. Celebrezze, (3 Cir. 1963) 312 F.2d 260. Mere reference to a list of industrial occupations does not require the plaintiff to go down such list and negate his capacity for each of them or their availability to him as actual opportunities for employment. Jarvis v. Ribicoff, (6 Cir. 1963) 312 F.2d 707. The plaintiff is not required to refute speculative possibilities of employment based upon the "Dictionary of Occupational Titles," when he is not physically capable of engaging in any employment, Jones v. Celebrezze, (6 Cir. 1963) 321 F.2d 192.

As to the plaintiff's contention that he meets the earnings requirements, the Act, 42 U.S.C.A. § 413(a) (2), (1961 Supp.), provides that the term "quarters of coverage" means a quarter in which the individual has been paid $50.00 or more in wages. The records of the de-

fendant Secretary show that the plaintiff's employers have reported wages as having been paid to the plaintiff for 19 quarters of coverage. The evidentiary effect of the Secretary's records is stated in 42 U.S.C.A. § 405(c) (3), as follows:

"The Secretary's records shall be evidence for the purpose of proceedings before the Secretary or any court of the amounts of wages paid to, and self-employment income derived by, an individual and of the periods in which such wages were paid and such income was derived. The absence of an entry in such records as to wages alleged to have been paid to, or as to self-employment income alleged to have been derived by, an individual in any period shall be evidence that no such alleged wages were paid to, or that no such alleged income was derived by, such individual during such period."

See Sandusky v. Celebrezze, (W.D.Ark. 1962) 210 F.Supp. 219.

It is the plaintiff's contention that although the defendant's records reflect 19 quarters of coverage, the plaintiff, in fact, is entitled to 21 quarters. The plaintiff's testimony is corroborated as to the periods he alleges to have worked and received pay for, but which were not reported, by the statement given to the defendant Secretary by a fellow employee, Edward Harris, and the statement from Border City Ice and Cold Storage Company. The hearing examiner erroneously declared that he could not consider the statement of Edward Harris because it was not made under oath or subject to cross examination. Harris made his statement on "Department of Health, Education, and Welfare, Form Approved, Budget Bureau No. 72–R518.3," which subjects anyone making false statements to prosecution:

"NOTICE—Whoever makes or causes to be made any false statement or representation concerning Federal old-age, survivors, and disability insurance wage records is subject to

not more than a $1,000 fine or 1 year of imprisonment, or both."

The statement of Harris would be entitled to consideration along with all the other evidence even without the sanction imposed by the defendant's approved administrative forms. The record is silent as to any investigation made by the defendant to attempt to ascertain or verify the details of plaintiff's employment with Patterson's painting company. Although plaintiff has the burden of proving his claim, the defendant has the duty to attempt to verify the facts as contended by the plaintiff, Sandusky v. Celebrezze, (W.D.Ark.1962) 210 F.Supp. 219. Although there is some dispute as to the amount of time the plaintiff worked for William Patterson as a painter, the plaintiff's testimony, his medical records and the corroborating evidence sustains his contention that he in fact worked and was paid two weeks salary which was in excess of $50 in the year 1958, in which no quarters of coverage have been certified. Because of the death of his employer, Patterson, the plaintiff has no other means to adduce evidence of his having been paid wages in 1958 other than by the statement of a fellow employee. The plaintiff first brought the matter of his employment by Patterson to the defendant's attention in January 1961, well within the provisions of the statute of limitations for contesting the Secretary's records, 42 U.S.C. § 405(c) (1) (B), although the plaintiff himself erroneously thought the records were complete.

Based upon the complete record before the court, including the nature of the plaintiff's physical and mental impairments, together with his lack of education, age and experience, the court is convinced that the plaintiff has sustained his burden of proving disability and a period of disability as defined by the Act, and that he is entitled to at least one additional quarter of coverage, which under the Act will meet the earnings requirements, and that the conclusion of the hearing examiner and Appeals Coun-

cil to the contrary were not based upon substantial evidence or upon a proper application of the governing law.

Therefore, an order is being entered today in accordance with this opinion granting the plaintiff's motion for summary judgment, and reversing and remanding the case to the defendant Secretary with directions that the plaintiff be credited with one additional quarter of coverage and granted a period of disability and disability benefits in accordance with his application.