**Verdo H. POWELL, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 872.**

United States District Court
W. D. Arkansas,
Texarkana Division.

June 8, 1964.

Larey & Larey, Texarkana, Ark., for plaintiff.

Charles M. Conway, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

Plaintiff, after having exhausted all administrative remedies, seeks review of a final decision of the defendant Secretary denying his disability benefits under Title 42 U.S.C. § 401 et seq. The case is now before the court on cross motions for summary judgment. The parties have submitted briefs in support of their respective contentions, which the court has considered along with the record.

The pleadings, administrative transcript, and briefs disclose the following facts which are not disputed. The plaintiff was born June 13, 1914, in Patmos, Arkansas. He attended school through the 12th grade at Spring Hill, Arkansas. He was first employed in 1937 by Dravo Contracting Company of Pennsylvania. His work activity consisted of bending sheet metal and running an overhead crane. This employment lasted one year. He was next employed by Nevill Tire Company in Pennsylvania as a pipe fitter and repair worker for one year. For two years he was employed by Continental Oil Company in Neoplatt, Louisiana, as a pipe fitter and laborer with some experience running a paraffin cleaning machine. Because of his pipe fitting experience he was employed next by Nichols Drilling Company as a roughneck on drilling rigs at Neoplatt. He worked in and around the oil fields of Neoplatt, Louisiana, area until he entered the Army. While in military service 3½ years, he served primarily as a military policeman. After his release from the service he spent two more years roughnecking in the oil fields. He then farmed for four years and later returned to the oil fields where he spent the next five to six years. While working in the oil fields in the Neoplatt, Louisiana, area in 1960, he was admitted to the VA Hospital at Shreveport, Louisiana, to determine the cause of profuse rectal bleeding.

Upon entry into the VA Hospital and examination of the plaintiff, he was found to be suffering from rectal cancer, and a colostomy was recommended. On May 17, 1960, the plaintiff's entire colon was removed. Dr. Joel W. Williamson, who performed the operation, in a VA Clinic Report, dated July 21, 1960, stated:

"Patient was typed and matched for three units of blood; and on 17 May 60, an abdominoperineal procedure was done without too much difficulty. There was so much sigmoid colon involved that the colon had to be removed in two segments, as described in the operative report and pathology report. Postoperatively, the patient was maintained on intravenous fluids, electromytes, and vitamins for the first three postoperative days. He also had Levin tube and Wangensteem suction in place during this time. The colostomy clamp was removed at the end of 48 hours.

Colostomy was then dressed as needed. At the end of the first three postoperative days, patient was started on graduated diet, which was slowly increased to a regular type diet. Heat cradle and soaks to the perineum were given, three times daily, as hygiene measures. Patient was maintained on intravenous Terramycin until he could tolerate it by the oral route. Sedation in moderate amounts was given. Patient began to run febrile elevations, and it was thought that he might be developing a deep pelvic abscess. Terramycin was discontinued and Declomycin was started. Patient continued to be relatively asymptomatic as to examination, but continued to run temperature elevation. On 31 May 60, he developed a severe thrombophlebitis of the left leg. He was started on conservative measures, consisting of elevation of leg on pillow, heat cradle to leg, buccal Varidase, and antibiotics. On 2 June 60, antibiotics were changed to Chloromycetin in therapeutic doses. He continued to run temperature elevation. Chloromycetin was discontinued on 13 June 60, as was Altafur, and Combiotic started. At this time, patient had moderate diarrhea, which was controlled with Kaopectate. On 13 June 60, patient had mild chest pain. X-rays were suggestive of pneumonitis, but in view of the thrombophlebitis, it was thought that small pulmonary emboli were a possibility. Patient was then started on maintenance doses of Dicumarol. This therapy was continued, with daily prothrombin times and prescribed amounts of Dicumarol as indicated by the daily prothrombin time. Prothrombin times were kept at a level of approximately twice the normal value. This was continued until the time of discharge. Thrombophlebitis slowly subsided. Swelling of the leg almost completely disappeared. Left leg was wrapped daily with Ace bandages. Patient was gradually ambulated in a wheel chair and then ambulated to tolerance. He continued to have some swelling of his lower left leg and foot after considerable walking; however, this was painful to the patient. Perineal wound continued to heal in from the depths outwards and was almost completely healed at the time of discharge. Colostomy is functioning properly, and patient was fitted with a permanent type of colostomy bag. Patient was instructed and advised to dilate colostomy stoma with a lubricated gloved finger periodically. He was also advised to continue physical activity to tolerance while at home. He was discharged CBOC on 7–21–60, and requested to return to Tumor Board in two months (9–21–60)."

The VA clinical records also disclose two other entries made by Dr. Williamson, which appear at page 88 of the transcript, in which he stated:

"9–21–60—Patient had abdominoperineal resection, complicated postoperatively with thrombophlebitis and phlebothrombosis, in May, 1960, and was discharged from the hospital for follow-up in July, 1960. He has done well while at home except for some swelling of the legs. Patient wears Ace bandages, and it is recommended that he wear elastic stockings. Perineal incision is nicely healed. Colostomy is functioning well. Abdominal examination otherwise is negative. Weight is 191 lb. He is to return from Tumor Board follow-up in three months (12–21–60).

"12–21–60—Patient is relatively asymptomatic in regard to abdomen and perineum. Colostomy is functioning well and is dilated digitally by patient every other day. He has not had any digestive disturbances or any abdominal symptoms.

"Exam. of abdomen is negative. It shows well-functioning colostomy and well-healed abdominal incision. There are no palpable masses in the liver or under the abdominal wall.

"Patient continues to have some difficulty with pain in legs, as well as swelling of legs. This is worse in left leg. It responds satisfactorily to rest and elevation. Return for Tumor Board in three months (3–22–61)."

On September 22, 1961, plaintiff was given a consultative examination in connection with his disability application by Dr. Richard J. Schneble of Texarkana, Arkansas. In his report to the State Department of OASI dated September 23, 1961, Dr. Schneble stated:

"Physical examination showed a somewhat obese white male, who appeared to be in good health, having a height of 5 feet 7 inches, weight 193, temperature 98.2. The blood pressure was 150/90 in both arms, pulse rate was 92. The pupils were round and equal and reacted normally. The fundi were normal. The nasal septum was deviated to the left. Examination of the ears, mouth and throat were normal. Carotid pulsations were normal. The thyroid was not enlarged. There were no enlarged lymph nodes. The lungs were clear to percussion and auscultation. The heart was normal in size. The rhythm was regular and no murmurs were heard. Examination of the abdomen showed a colostomy on the left side. There was no enlargement in the liver. There were no abdominal masses. The perineal scar was well healed. There was no induration or drainage. I was unable to palpate any masses below the scar. The pulsations in the femoral, dorsalis pedis and posterior tibia arteries were present. There was some firm pitting edema of the ankles. There were no apparent varicose veins. Homan's sign was negative but dorsiflexion of the foot caused some pain in the ankles. Knees had a normal range of motion with no significant crepitation. Rotation of the hip joints did not cause any pain and straight leg raising did not cause any pain. Veins on the inner aspect of the left upper arm were somewhat prominent. There was a scar on the left lower chest in back from a bullet injury in 1950.

"At this time Mr. Powell appears to be in good health regarding his heart, lungs, colostomy, blood pressure and general health. There appears to be no evidence of recurrence of the cancer at this time. His weight has been reasonably steady the past few months. His appetite is excellent. The bowel movements are fairly normal for a colostomy. Chest X-ray shows no evidence of metastasis. He does have some slight firm pitting edema of the ankles which I presume is due to a residual of his phlebitis. The joints showed minimal arthritic changes. Since Mr. Powell has not been on any medication, it might be advantageous for him to take some type of treatment for his back and leg pains and to wear elastic stockings more consistently for his legs."

Dr. Schneble's report does not include any opinion or finding with respect to the limitation of plaintiff's physical and occupational activities due to his physical impairments. His objective findings are substantially in accordance with those reflected in Dr. Williamson's clinical reports.

In a clinical report of the VA Hospital by Dr. Williamson dated March 7, 1962, he stated:

"*STATUS OF PATIENT AT TIME OF DISCHARGE*: This patient appears to be doing well relative to his carcinoma of the rectum and his postoperative status. There is no definite evidence of any reoccurrence locally or mediastinal. This patient continues to have severe difficulty relative to his legs. After he is am-

bulated for a very short time, he develops marked edema or swelling of both lower extremities. This swelling involves the entirety of both lower legs. It cannot be completely or adequately controlled with the use of elastic bandages. It is hoped that the use of elastic stockings will give him some benefit; however, it is felt that this man is incapacitated as far as being on his feet for any particular period of time. He has also developed swelling of the left arm and this appears to be a migratory type of thrombophlebitis. I do not believe that this man is capable for being on his feet, other than short periods of time.

"FINAL DIAGNOSES: 1. Adenocarcinoma of the rectum, postoperative evaluation. No treatment required.

"2. Migratory thrombophlebitis involving both lower extremities and left arm. T.I.

"3. Post-phlebitic syndrome, severe, with marked swelling involving both lower extremities. T.I.

\* \* \* \* \* \*

"RECOMMENDATIONS: It is recommended to this patient that he wear his elastic stockings at all times during periods of ambulation. He may take these stockings off at night but should replace them immediately before arising in the morning. Patient is also told that it would be best for him to refrain from long periods of walking or standing. When patient is sitting, he should elevate legs so that edema can subside. It is also requested that he return in six months for Tumor Board examination relative to his postoperative status of carcinoma of the rectum."

Plaintiff was reexamined on November 14, 1962, by Dr. Frank M. Adams of Hot Springs, Arkansas. In his report Dr. Adams stated:

"DIAGNOSIS: 1. Thrombophlebitis and venous thrombosis, idiopathic, popliteal veins, bilateral, with resultant edema of both lower extremities below the level of the knees at the time of the examination.

2. Varicose veins involving the superficial veins of the left upper anterior chest and left arm, probably unrelated to No. 1.

"COMMENT: This applicant undoubtedly had thrombosis of the deep veins of both legs following abdominal surgery in April 1960. He has had recurrent edema of the lower extremities since. My examination was conducted approximately four hours after he arose from his bed and at the time the edema extended no further than the level of his knees. Both legs seemed about equally involved as far as I could determine. It seemed likely that all of this edema is due to previous occlusive venous disease and is not related to disturbances in heart function, serum proteins, and the many other causes of edema. According to the applicant's history he finds the wearing of elastic hose uncomfortable. It is interesting that he did not wear the hose on the day of his examination so it is impossible to say what effect this type of support has on the amount of swelling that he experiences. At the time I examined him he was able to squat, bend and walk in a normal fashion. I do not feel that the mild degree of varicosity involving the superficial veins of the left pectoral and left arm areas are in any way connected with the previous thrombophlebitis of the leg veins. Certainly one sees that amount of vein dilation about the upper trunk without symptoms quite frequently. Relative to the leg edema, one wonders why this applicant is not on a program of sodium restriction, weight reduction, and oral diuretics. His main handicap at the present time seems to be relative to the swelling of his legs that comes on following assuming

the upright position. A certain amount of walking and moving about is often beneficial in this type of person. I did not find his legs so swollen today as to interfere with any of the normal movements of the lower extremities. On the other hand, I would expect that his edema would be considerably more marked later in the day."

In addition to the plaintiff's subjective evidence relating to his education and vocational experience and the medical evidence adduced by him, the record contains various affidavits. The owner of Parks Products Company in Russellville, Arkansas, in his affidavit sworn to November 27, 1961, stated:

"This is to state that I have known Verdo Powell all of his life. I knew him when he was in perfect physical condition, as a farmer, soldier, and an oil field employee.

"In the year of 1960 he was confined for some several weeks in veterans hospital at Shreveport, Louisiana for the removal of a cancer from his lower digestive tract. This has left Verdo Powell physically unable to pursue a job. His legs are in such condition that he cannot stand on them for any length of time. Also, he has to leave his work at certain intervals to eliminate body waste. He is highly nervous due to his condition. I do not believe that any employer would employ him as a regular employee in physical labor, and he is not equipped educationally for office work, and if so he could not sit for long periods in this kind of employment. His condition is such that he is uninsurable.

"He has a wife and six dependent children which make his obligations very critical due to his physical condition.

"I have a dimension mill in which we employ at the present time 32 men. Yet, I do not have a place for this man due to his physical condition. And, knowing him as I do, I do not believe there is any concern, at least not in this area, that would give him employment."

Mr. Chester May stated in his affidavit sworn to November 25, 1961, as follows:

"My name is Chester May and I live on Highway 29 south of Hope. I have known Verdo H. Powell, who lives on the same highway south of me, all of his life. I have been a member of the School Board for a number of years in the School District where Verdo Powell lives. I operate the Butane Gas Company, 216 South Walnut Street, Hope, Arkansas, using truck drivers and persons to install Butane equipment and make deliveries, etc. This work is not too strenuous but Verdo Powell is not able to do any work in my business. I use a person in the office part of the time, but while he used to be a good truck driver and farmer before he became disabled, he is not trained to do any office work and he can't stand on his feet except for a short time. He can't even sit straight in a chair and frankly, I don't know any kind of work in this area that he could get to do that he could do in his present condition."

There are two affidavits made by owners of service stations in the area in which the plaintiff lives which recite that the plaintiff will not be hired by them because of his physical condition.

On September 27, 1963, the Appeals Council, after having reviewed the hearing examiner's decision denying disability benefits, wrote to the plaintiff, and in the concluding paragraphs stated:

"The Appeals Council does not question the fact that the claimant has thrombophlebitis. The presence of that condition, however, does not necessarily establish an inability to engage in any form of substantial gainful activity. This view has received judicial recognition. Stobaugh v. Flemming, D.Ark., Nov. 23, 1959 (CCH UIR Fed. para. 8769); Woolf v. Flemming, D.Tex., June 26,

1959 (CCH supra at para. 8725). Granted that persons with thrombophlebitis may be precluded from engaging in certain types of employment, as for example, jobs which require constant standing in one position for long periods of time, it does not follow that they must discontinue all work and spend the rest of their days lying on their backs with legs elevated. Cf. Kraynak v. Flemming, C.A.3, October 24, 1960 CCH supra, para. 8956, in which the Third Circuit sustained a finding that the claimant was not under a statutory disability even though his impairments made him unable to engage in work requiring a strong grip in the right hand or prolonged walking or standing. Further, an individual cannot be found to be under a disability where he can, with reasonable effort and safety to himself, achieve a substantial reduction of his symptoms. See Senate Report 1987, 83d Congress, 2d Sess., and section 404.1502(g) of Social Security Administration Regulations No. 4 [20 C.F.R. 404.1502(g)].

"Based upon the entire record, the Appeals Council concludes and finds that the claimant has not established being under a 'disability' from a time on or prior to December 8, 1960, the expiration of the effective period of his application filed on September 8, 1960.

"It is the decision of the Appeals Council that the claimant is not entitled to the establishment of a period of disability or to disability insurance benefits under sections 216(i) and 223, respectively, of the Social Security Act, as amended. The decision of the Hearing Examiner is affirmed."

The plaintiff has met the special earnings requirements for disability purposes as of the date he alleged the onset of his disability. The plaintiff contends that the defendant Secretary failed to adduce any evidence of the type of work available to the plaintiff, assuming he was capable of performing it, nor was there substantial evidence to support the conclusion that the plaintiff was not physically impaired within the requirements of the Social Security Act.

The defendant contends that the plaintiff was not physically impaired to the extent required by the Act and further asserts that the claimant has not established being under a disability from a time on or prior to December 8, 1960. The only issue before the court upon the record is whether there is substantial evidence in the record to support the decision of the defendant Secretary.

■■ The burden of proof is upon the plaintiff to establish that he has met the requirements of the Act to be granted disability benefits. The applicable statutes and regulations require a medically determinable physical impairment, which can be expected to continue for a long and indefinite period of time, of such extent as to prevent a person from engaging in any substantial gainful activity before disability can be granted. See, 42 U.S.C. §§ 416(i) (1), 423(c) (2), and 20 C.F.R., Sec. 404.1502(f).

■ The elements of proof in establishing a disability which entitles a claimant to benefits of the Act under 42 U.S.C. § 401 et seq., are generally stated as follows: (1) the objective medical evidence; (2) subjective evidence furnished by the plaintiff; (3) expert medical opinions; (4) plaintiff's education, work history, and age. See, Underwood v. Ribicoff (4 Cir. 1962), 298 F.2d 850.

The relative burdens of proof are carefully analyzed in Jones v. Celebrezze (6 Cir. 1963), 321 F.2d 192, at page 198 in which the court stated:

"In Ellerman v. Flemming, D.C., 188 F.Supp. 521, 527, the Court said:

" 'Under the Social Security Act, unlike some other statutes, it is not the burden of the claimant to introduce evidence which negatives every imaginable job open to men with his

impairment, and of his age, experience and education. It is quite enough if he offers evidence of what he has done, of his inability to do that kind of work any longer, and, of his lack of particular experience for any other type of job. If there are other kinds of work which are available and for which the claimant is suited, it is the defendant's burden to adduce some evidence from which a finding can be made that he can do some type work; actually, not apparently * * *.' "

In Chronister v. Celebrezze (W.D.Ark. 1963), 224 F.Supp. 121, at page 127, this court stated:

"The plaintiff sustains his burden of proof under the Act when he produces evidence that shows his physical disabilities, education, experience and inability to engage in substantial gainful activity in the future. Jones v. Celebrezze, supra. The Act does not require a plaintiff to be totally helpless or bedridden to be entitled to disability benefits. Hawkins v. Celebrezze, supra [D.C., 210 F.Supp. 341]; Park v. Celebrezze, (W.D.Ark.1963) 214 F.Supp. 153. The plaintiff is not obligated under the Act to introduce evidence which negates every imaginable job open to men with his impairment, age, lack of education and experience. It is quite enough if he offers evidence of what he has done in the past, of his inability to perform that type of work in the future, and his lack of particular experience for any other type of work."

■ Thus, the plaintiff establishes a prima facie case in his application for disability benefits when he adduces evidence showing his (1) past vocational activities, age, education and experience, and (2) his inability to engage in these activities in the future because of physical impairments of permanent and indefinite duration.

The defendant Secretary in the instant case predicates his affirmance of the hearing examiner's denial[1] of disability benefits on the basis that the plaintiff failed to meet his burden of proof. An examination of the medical evidence, the plaintiff's subjective evidence, and the accompanying affidavits clearly demonstrate that the plaintiff met his burden of proof under the Act. It should be noted that the defendant, as heretofore stated, has the burden of going forward to show that the plaintiff is capable of engaging in substantial gainful activity. In the instant case the defendant's decision is not only not supported by substantial evidence on this issue, there is no evidence adduced by the defendant in the record whatever to show that the plaintiff can engage in substantial gainful activity. It is interesting to note that the only evidence in the record on this issue was introduced by the plaintiff and which negates any possibility of his engaging in substantial gainful activity, even though the burden did not fall upon the plaintiff to introduce any evidence on this issue whatever. Thus, the defendant is in the position of disputing the credibility of the witnesses and evidence introduced by the plaintiff on this issue, having introduced no evidence himself.

The defendant is in almost the same position in the instant case with respect to his failure to adduce evidence on an issue which he had the burden of proof,

---

1. "The findings of fact made by the hearing examiner are conclusive if supported by substantial evidence, Celebrezze v. Bolas, (8 Cir. 1963) 316 F.2d 498, and a majority of courts also extend the finality of the hearing examiner's findings to inferences and conclusions which he draws from the evidence if there is a substantial basis for the conclusion, Hawkins v. Celebrezze (W.D.Ark.1962), 210 F.Supp. 341; Morris v. Ribicoff (W.D.Ark.1961), 194 F.Supp. 841. Conclusions of law made by the hearing examiner are entitled to great weight, Harmon v. Ribicoff (W.D.Ark.1961), 192 F. Supp. 743. But such conclusions of law are not binding upon the court, Blanscet v. Ribicoff (W.D.Ark.1962), 201 F.Supp. 257." King v. Celebrezze, (W.D.Ark. 1963) 223 F.Supp. 457, 464.

as in Jones v. Celebrezze, supra, in which the court 321 F.2d at page 198 stated:

"It was stated by the Court in Randall v. Flemming, D.C., 192 F. Supp. 111, 112, that:

" '[The] test of a claimant's disability or inability to engage in any substantial gainful activity is a subjective one and claimant need not establish complete absence of any opportunity for substantial gainful employment and he need only establish that he has become disabled from employment in any work in which he could profitably seek employment in light of his physical and mental capacities and his education, training and experience and he need not be totally helpless or bedridden.'

"Because of appellee's failure to carry the burden to show that appellant was able to perform some kind of substantial gainful activity, appellant is entitled to prevail on his proofs that he was totally disabled for any substantial gainful activity. Rice v. Celebrezze, 315 F.2d 7, 17 (C.A.6). Here no evidence was introduced on behalf of appellee; and, instead of appellee's carrying the burden of proof, the evidence supports appellant's claim."

■ As in Jones v. Celebrezze, supra, this court, because of the defendant's failure to carry his burden of proof with respect to some kind of substantial gainful activity in which the plaintiff could engage, cannot say that the defendant's conclusion in denying plaintiff disability benefits is supported by substantial evidence, when, in fact, the only evidence in the record on the issue was introduced by the plaintiff, and negates the possibility of his engaging in any activity which, because of his limited education and experience, necessitates bending, stooping, lifting, etc. As heretofore stated, it is the defendant who has the burden of showing what substantial gainful activity the plaintiff might engage in after the plaintiff adduces evidence of his past vocational activities and his inability to

engage in them in the future, as stated in Chronister v. Celebrezze, supra, 224 F.Supp. at page 127:

"If there are other kinds of work which are available and for which the plaintiff is suited, it is the defendant's burden to adduce evidence from which a finding could be made that he can do some type of available work, Hodgson v. Celebrezze, (3 Cir. 1963) 312 F.2d 260."

It is interesting to note in the concluding paragraphs of the Appeals Council's letter of September 27, 1963, quoted above, that the Appeals Council also predicated its denial of benefits on the failure of the plaintiff to meet his burden of proof. The Appeals Council further stated that the "alleged disability" was not established prior to December 8, 1960. However, in the hearing examiner's decision, dated June 22, 1962, he stated:

"On May 31, 1960 the claimant developed a severe thrombophlebitis of the left leg. Following therapy the thrombophlebitis slowly subsided. The swelling of the leg almost completely disappeared. The left leg was wrapped daily with Ace bandages, claimant was gradually ambulated in a wheel chair and then ambulated to tolerance. * * *

\* \* \* \* \* \*

"The record reveals that on May 31, 1960 the claimant developed a severe thrombophlebitis of the left leg while he was being treated for the carcinoma, and he was then started on conservative measures. When he was discharged from the hospital on July 21, 1960, the report indicated that the swelling of the leg had almost completely disappeared, although claimant continued to have some swelling of his lower left leg and foot after considerable walking, this was not painful. At a follow-up in September 1960 the claimant was advised to wear elastic stockings. In December 1960 there was some pain and swelling, worse in the

left leg, but the report indicated that this responded satisfactorily to rest and elevation."

The hearing examiner also stated that he based his denial of disability benefits on the failure of the plaintiff to meet his burden of proof to establish an impairment prior to December 8, 1960.

The defendant, however, adduced no evidence whatever to show what, if any, activity the plaintiff might engage in. There is no evidence adduced by the defendant on which he might permissively base a conclusion that the plaintiff is capable of engaging in substantial gainful activity. This court has emphatically stated that after a claimant meets the burden of proving past activity and inability to engage in that in the future, that the burden shifts to the defendant to show the possibilities of substantial gainful activity. It cannot be said that the passing reference to the claimant's ability to engage in substantial gainful activity by the hearing examiner in his report denying disability benefits amounts to such substantial evidence that the court may affirm the decision of the defendant Secretary.

■ The medical evidence discloses a permanent physical condition which is becoming progressively worse, and which prevents the plaintiff from being on his feet for any prolonged period of time. In fact, the plaintiff is physically incapable of even sitting for any period of time without elevating his legs. The necessity to elevate his legs to relieve the phlebitis condition was recognized and recommended by the physician who removed his colon as early as May 1960. The record also conclusively establishes that the plaintiff, because of his education and experience, is not fitted for any activity other than occupations embracing such physical activity.

Therefore, upon the complete record before the court, including the nature of the plaintiff's physical impairments, together with his limited ability, education and experience, the court is convinced that the plaintiff sustained his burden of proving disability and a period of disability as defined by the Act, and the conclusions of the defendant Secretary to the contrary are not based upon substantial evidence or upon a proper application of the governing law.

An order is being entered today in accordance with this opinion, denying the defendant's motion for summary judgment, granting the plaintiff's motion for summary judgment, and reversing and remanding the case to the defendant Secretary with directions that the plaintiff be granted a period of disability and disability benefits in accordance with his application.