Ensley D. WILLIAMS, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education & Welfare, Defendant.

No. LR–64–C–113.

United States District Court
E. D. Arkansas, W. D.

June 24, 1965.

L. M. Alexander, N. Little Rock, Ark., for plaintiff.

Robert D. Smith, Jr., U. S. Atty., and W. H. McClellan, Asst. U. S. Atty., Little Rock, Ark., for defendant.

HENLEY, Chief Judge.

This is a suit brought by Ensley D. Williams, a citizen of the Western Division of the Eastern District of Arkansas, pursuant to section 205(g) of the Social Security Act, as amended. 42 U.S. C.A. § 405(g),[1] to secure judicial review of a final decision of the Secretary of Health, Education & Welfare, acting through the Social Security Administration, that plaintiff is not entitled to a period of disability under 42 U.S.C.A. § 416(i) or to disability insurance benefits under 42 U.S.C.A. § 423. The cause is before the Court on the complaint, the Secretary's answer to which is attached a complete transcript of proceedings before the Social Security Administration in connection with the plaintiff's claim, and the Secretary's motion for summary judgment.

Plaintiff's application, the final denial of which brought about this lawsuit, was filed on September 12, 1962. It was preceded by another application or applications filed in 1959. Both the earlier and the later applications alleged an onset of disability in 1954, the impairments complained of being arthritis and heart trouble.[2]

In order for plaintiff to prevail with respect to either the 1959 applications or the 1962 application it was necessary for him to show not only that he was suffering from a disability as defined by the statute, but also that he met the "earnings requirement" set forth in sections 416(i) and 423. That requirement presented no problem in connection with the 1959 applications, but it is of controlling significance in this case.

Plaintiff's 1959 applications were denied at the lower administrative levels and plaintiff sought and obtained a hearing before a Hearing Examiner of the Administration's Bureau of Hearings and Appeals. On October 19, 1960, the Examiner filed an opinion denying the applications. The Examiner's conclusion was that plaintiff had failed to establish by a preponderance of the evidence that during the effective periods of his applications he was laboring under a disability as defined by the statute.

Under the law plaintiff had 60 days from receipt of notice of the Examiner's decision to request a review thereof by the Administration's Appeals Council. Plaintiff did not file a request for such review within that 60 day period. He did file a belated request for review in 1961, which was denied as untimely.

---

1. Further references to sections of the Social Security Act will be to the sections as they appear in Title 42 U.S.C.A.

2. Sections 416(i) and 423 define a disability as being an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration.

When the 1962 application was filed, the agency determined initially that plaintiff no longer met the earnings requirement of the Act, which will presently be explained in some detail, and that there was no reason on the basis of additional medical evidence submitted by plaintiff to reopen the 1959 applications. After reconsideration of the initial determination was denied, plaintiff requested a hearing before a Hearing Examiner. The request was granted, and the matter was assigned to the same Examiner who had considered the original applications.

Following a series of hearings at which plaintiff appeared in person and by counsel the Examiner on November 27, 1963, filed an opinion denying the 1962 application. In due time plaintiff requested a review by the Appeals Council. Although that body considered two items of additional documentary evidence submitted to it by plaintiff, formal review of the Examiner's decision was denied. That denial amounted to a final decision of the Secretary of Health, Education & Welfare, and this suit was filed in due course.

The Examiner found that medical evidence introduced in connection with the 1962 application did not justify reopening the 1959 decision, and it was therefore necessary for him to consider the 1962 application on its own merits as it related to the period of time subsequent to September 30, 1956, the date on which it was found in connection with the 1959 applications that plaintiff had last met the earnings requirement of the Act.

With regard to the 1962 application the Examiner determined that the effective period of that application was from March 11, 1961, to December 1962, and that it was incumbent upon plaintiff to establish "that he was both disabled and met the earnings requirement as early as March 11, 1961, or was both disabled and met the earnings requirement as late as December 1962." The Court construes the Examiner's statement that plaintiff must have been both disabled and in compliance with the earnings requirement "as early as March 11, 1961"

to mean that as of that date plaintiff must have been disabled and must also have met the earnings requirement, and that it would not be sufficient for plaintiff to show that as of some earlier date subsequent to September 30, 1956, he was under a disability while meeting the earnings requirement.

The Examiner's definition of the issue has not been challenged by plaintiff and would appear to be correct under the wording of the Act as it was written prior to the 1964 amendments. See Act of October 13, 1964, P.L. 88–650, 78 Stat. 1075.

The Examiner proceeded to consider whether a preponderance of the evidence established that plaintiff had met the earnings requirement of the Act with respect to the 1962 application and found ultimately that it did not. It was on this basis, coupled with the finding that the 1959 case should not be reopened, that the Examiner denied the claim.

 To the extent that the Examiner and later the Appeals Council determined that the 1959 case should not be reopened, their decision is not subject to judicial review in this action. A claimant for social security benefits is required to exhaust his administrative remedies and to seek judicial review within the time prescribed by the statute if the final decision of the Secretary is adverse to ˙im. If he fails to do so, the adverse decision of the agency is final and is res judicata. Hobby v. Hodges, 10 Cir., 215 F.2d 754; Boles v. Celebrezze, W.D.Va., 210 F.Supp. 856; 2 Davis, Administrative Law Treatise, § 18.02, p. 557. While the Secretary may have the power to vacate an original decision adverse to a claimant and reconsider a claim disallowed originally, a refusal on his part to do so is not a new "final decision" which is reviewable under section 405(g). Filice v. Celebrezze, 9 Cir., 319 F.2d 443; Hobby v. Hodges, supra; Gianforti v. Ribicoff, W.D.N.Y., 200 F.Supp. 450; Kinyoun v. Ribicoff, W.D.Mo., 194 F. Supp. 528.

 Turning now to the question of whether plaintiff discharged his bur-

den of showing that he met the earnings requirement of the Act with respect to his 1962 application, it must be kept in mind that this Court does not try the case de novo. If the agency finding is supported by substantial evidence, as that term is now conventionally understood in the context of federal judicial review of administrative findings, it is final and binding upon the courts. The finality accorded to the administrative fact findings extends to legitimate inferences drawn from the evidence by the agency's examiner, and if there are conflicts in the evidence or with respect to the inferences reasonably to ·be drawn therefrom, such conflicts are for the agency rather than the courts to resolve. Of course, arbitrary or capricious administrative action cannot be sustained, and a finding of fact which is based upon an erroneous view of the law must be set aside. Celebrezze v. Sutton, 8 Cir., 338 F.2d 417; Celebrezze v. Bolas, 8 Cir., 316 F.2d 498; Lewis v. Flemming, E.D.Ark., 176 F. Supp. 872.

Stated succinctly, the earnings requirement of the Act, as far as plaintiff's 1962 application is concerned, was that plaintiff must have had at least twenty quarters of coverage under the Act out of the last forty calendar quarters ending with the first quarter of 1961. 42 U.S.C.A. §§ 416(i) (3) and 423(c).

For social security purposes each year is divided into four three months periods ending, respectively, on March 31, June 30, September 30, and December 31. 42 U.S.C.A. § 413(a) (1). And as far as this case is concerned a quarter of coverage is a calendar quarter in which an individual receives from an employer wages in the amount of $50 or more, or derives income from self-employment amounting to $100 or more. 42 U.S.C.A. § 413(a) (2).

When wages and self-employment income are properly reported for purposes of the Social Security Act, records thereof are kept by the Secretary, acting through the Administration, and the records of the Secretary are admissible in evidence and are competent to show that wages or self-employment income was received during the periods shown on the records; and an absence of record entries of wages or income during a given period is evidence that there was no receipt of wages or income during that period. 42 U.S.C.A. § 405(c) (3).

During a limitations period of three years, three months and fifteen days following the ending of a calendar year the records of the Secretary may be corrected so as to eliminate errors whether of inclusion or omission. 42 U.S.C.A. § 405(c) (1) and § 405(c) (4).

After the expiration of the limitations period the records take on a degree of finality. If the records reflect creditable earnings during a given period in a given year, those records, subject to certain exceptions not here pertinent, may not be corrected after the expiration of the limitations period so as to eliminate the reflected earnings. 42 U.S.C.A. § 405(c) (4) (A).

The conclusiveness of an absence of record entries of earnings during a given period after the expiration of the limitations period depends upon whether the alleged earnings were wages received from an employer or whether they were self-employment income. With respect to wages, an absence of record entries during a quarter is, after the expiration of the limitations period, presumptive evidence that no wages were received during that quarter. 42 U.S.C.A. § 405(c) (4) (B). This presumption would seem to be rebuttable, and perhaps it can be rebutted by any substantial evidence of earnings during the quarter in question. With respect to self-employment income, however, an absence of record entries of such income with respect to a particular year is, after the expiration of the limitations period, conclusive evidence of the absence of such income unless it is shown that the claimant "filed a tax return of his self-employment income for such year before the expiration of the time limitation following such year * * *." 42 U.S:C.A. § 405(c) (4) (C).

The records of the Secretary covering the plaintiff's earnings from the first quarter of 1951 to the date of his application were part of the record before the Examiner and are before this Court.

Those records reflect that plaintiff had four quarters of coverage in 1951, three in 1952, two in 1953, none in 1954, 1955, and 1956, two in 1957, and none thereafter. As the Court construes the statute, plaintiff's 40-quarter period began with the second quarter of 1951 and ended with the first quarter of 1961, both of those quarters being included in the period. Thus, as far as the records are concerned plaintiff lacked ten of the 20 quarters of coverage required by the Act.[3]

 Subject to the limitations provisions of section 405(c), which have been mentioned, plaintiff had the right to show that he was entitled to quarters of coverage not reflected on the Secretary's records. Chronister v. Celebrezze, W.D. Ark., 224 F.Supp. 121. And the fact that he might show himself entitled to one or more quarters of coverage after the onset of his alleged disability would not necessarily be inconsistent with the existence of such disability. That is true because purely sporadic and insubstantial employment or self-employment might produce the rather minimal earnings necessary to entitle him to coverage with respect to a given period. It should be recognized however, that from a practical standpoint it is a somewhat delicate matter for a disability claimant to undertake to show for the purpose of establishing quarters of coverage income derived from work activities conducted during a period in which claimant is contending that he was totally disabled within the meaning of the Act.

Although plaintiff contended that his disability had its onset in 1954, he testified before the Examiner that in addition to the two quarters of coverage shown by the records for 1957 he had received earnings entitling him to four quarters

of coverage in 1954, four in 1958, two in 1960, and one in 1961, a total of eleven quarters in addition to those shown on the Secretary's records. In the proceedings before the Examiner plaintiff's testimony was corroborated with respect to 1954 and 1958, but was not corroborated with respect to 1960 and 1961. When the matter was before the Appeals Council, plaintiff submitted an unsworn statement of his alleged employer in 1960 and 1961.

By trade plaintiff is a carpenter, painter, and cabinet maker. With respect to 1954 plaintiff and Robert J. Brown, an attorney of North Little Rock, Arkansas, testified that plaintiff remodeled a house for Brown; that he worked from March up into October of that year and received approximately $1,000. A cancelled check from Brown to plaintiff, dated October 15, 1964, in the sum of $350.55 was introduced in evidence. Both Brown and plaintiff testified that the check did not represent full payment for the work, and that, as indicated, the total compensation paid plaintiff by Brown was about $1,000.

Apart from any question of the limitations period prescribed by section 405(c) (1) (B), that evidence, if accepted, was sufficient to show that plaintiff was entitled to the claimed four quarters of coverage in 1954, and those quarters will be called the Brown quarters.

With respect to 1958 plaintiff introduced evidence, which the Examiner accepted, that he had earnings sufficient to give him four quarters of coverage in that year, and the Examiner found that he should be credited with those quarters. Those earnings were derived from work performed for William R. Cox and Mrs. Ernest O. Jennings, and will be called the Cox quarters.

Plaintiff also testified that he worked for Herbert H. Ashcraft during the third and fourth quarters of 1960 and the first quarter of 1961. Plaintiff testified that Ashcraft paid him a total of $156 for his

---

3. Assuming that the 40-quarter period began with the first quarter of 1951 and ended with the fourth quarter of 1960, it appears that plaintiff was credited on the records with 11 quarters of coverage and would lack 9 quarters of meeting the 20-quarter requirement.

work, but plaintiff did not break the payments down with respect to quarters.[4]

As has been said, the Examiner gave plaintiff credit for the Cox quarters. He did not give any credit for any of the Brown quarters or for any of the Ashcraft quarters. The Cox quarters were not sufficient to enable plaintiff to meet the earnings requirement; nor would that requirement be met by adding to the Cox quarters either the Brown quarters standing alone or the Ashcraft quarters standing alone.

If the Cox quarters are added to the quarters shown on the Secretary's records, and if the Brown quarters are also added, but the Ashcraft quarters excluded, plaintiff would have a total of 18 quarters of coverage, two short of the required 20. If the Cox quarters are added to the quarters shown on the records, and if the Ashcraft quarters are then added, but the Brown quarters excluded, plaintiff would have only 17 quarters of coverage.[5]

From what has just been said it is clear that it was and is vital to plaintiff to be credited with both Brown and Ashcraft quarters in numbers sufficient to make up his deficiency. If the Examiner and the Appeals Council were correct in denying in toto the claim for the Brown quarters, the correctness of their decision as to the Ashcraft quarters is immaterial, and the converse of that proposition is also true.

The Court is convinced from its consideration of the record that the disallowance of the Brown quarters was based on underlying factual findings which have substantial evidentiary support, and that the disallowance of those quarters on that factual basis was legally correct. Hence, as indicated, there is no necessity for the Court to consider the correctness of the decision with respect to the Ashcraft quarters.

The overall tenor of the Examiner's opinion indicates that he did not rate plaintiff highly as a credible witness and was reluctant to accept plaintiff's testimony except to the extent that it was corroborated by other evidence. However, the Examiner did not reject plaintiff's testimony as to the Brown quarters, and that testimony was corroborated by the testimony of Brown and by the cancelled check which was introduced in evidence. It must be assumed, therefore, that the Examiner found that plaintiff did perform work for Brown during all four quarters of 1954 and that during each quarter he received sufficient earnings to satisfy the requirements of the Act as far as quarters of coverage were concerned.

The basis of the rejection of the claim for the Brown quarters was the limitations provisions of section 405(c). It was the determination of the agency that those provisions precluded crediting plaintiff with the quarters in question. And ultimately it is the correctness of that determination which the Court is called upon to review.

The three years, three months and fifteen day period with respect to 1954 expired in 1958. It is clear that plaintiff gave no indication to the Social Security Administration within that period that he was claiming quarters of coverage with respect to 1954; nor is there anything in the record to suggest that within said period plaintiff filed a self-employment tax return showing self-employment income derived in 1954. Plaintiff was represented by capable counsel in the proceedings before the Ex-

---

4. In his unsworn statement before the Appeals Council, submitted of course, after the Examiner had denied plaintiff's claim, Ashcraft said that he paid plaintiff $157; that $50 was paid during the third quarter of 1960, $50 during the fourth quarter of that year, and the balance of $57 during the first quarter of 1961.

5. Under the assumption that the 40-quarter period began with the first, rather than the second quarter of 1951 (see Note 3, supra), the addition of the Cox and Brown quarters to the quarters shown on the records would give plaintiff 19 quarters of coverage, one short of the required number. Adding the Cox and Ashcraft quarters would give plaintiff 18 quarters of coverage.

aminer, and it was plaintiff's duty to bring forward any evidence at his command which would take him out of the scope of the limitations provision. It is fair to assume, therefore, that no self-employment tax return was filed which would make the limitations provision inapplicable.

The fact that the Secretary's records were not corrected within the limitations period is not entirely dispositive of the matter because if the earnings derived from Brown in 1954 were wages paid to an employee by an employer, then the absence from the Secretary's records of entries reflecting such earnings would be presumptive evidence only that the claimed earnings had not been received. However, the Examiner apparently characterized the relationship between plaintiff and Brown as that of a contractor-contractee, and characterized plaintiff's earnings during 1954 as self-employment income. If those characterizations were correct or permissible under the evidence then in the circumstances here present the absence of entries on the Secretary's records reflecting the receipt of that income is conclusive evidence that the income was not received.[6]

Although plaintiff took the position ultimately and was supported therein by Mr. Brown that plaintiff was Brown's employee, and that the compensation paid plaintiff by Brown was wages, there is ample evidence of record to justify a finding that plaintiff was hired by Brown to accomplish a given end result, and that plaintiff had full control over the details of the accomplishment and over the means and methods to be employed to bring about the desired result. Such being the case plaintiff was, under settled principles of law, an independent contractor. He was not an employee or a servant.

While the Examiner might perhaps have made a clearer finding than he did that plaintiff was an independent contractor, nevertheless when the record, including not only the Examiner's opinion but also questions asked and comments made by the Examiner in the course of the hearing, is carefully considered the Court is persuaded that the Examiner did so find, and that his finding must be sustained.

The decision of the Secretary will be affirmed.

---

6. Section 405(c) (4) (C), unlike section 405(c) (4) (B), does not lay down a rule of evidence. The rule stated is one of substantive law couched in evidentiary terms. If self-employment income is not reflected on the Secretary's records within the limitations period, it simply cannot be considered unless the recipient of the income has shown it on a self-employment tax return filed within that period.