Alma M. McCALIP, Plaintiff,

v.

Elliot L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant.

Civ. No. 1660 L.

United States District Court, D. Nebraska.

March 20, 1971.

Bryce Bartu, Seward, Neb., for plaintiff.

John A. Gale, Asst. U. S. Atty., for defendant.

## MEMORANDUM

URBOM, District Judge.

The plaintiff, Alma M. McCalip, seeks judicial review [1] of the final decision of

---

1. 42 U.S.C.A. § 405(g) provides:

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Secretary or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Secretary, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations. The court shall, on motion of the Secretary made before he files his answer, remand the case to the Secretary for further action by the Secretary, and may, at any time, on good cause shown, order additional evidence to be taken before the Secretary, and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings

the Secretary of Health, Education and Welfare which holds that she is not eligible to receive child's insurance benefits as provided in the Social Security Act of 1935, as amended.[2]  The matter has been submitted to this court on cross-motions for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.

On March 1, 1968, the plaintiff filed an application for surviving child's insurance benefits[3] and on October 31, 1968, her claim was denied.  After unsuccessfully challenging the initial denial on a request for reconsideration filed with the Social Security Administration, the plaintiff requested and was granted a formal hearing on her original application.  On October 15, 1969, the plaintiff, represented by counsel, presented her case *de novo* before a hearing examiner.  It was the examiner's opinion that the plaintiff was not eligible for child's insurance benefits because she was not under a "disability"[4] within the meaning of the Social Security Act, as amended, which commenced prior to her 18th birthday and continued without interruption to the date of her application.  The examiner's decision was affirmed by the Appeals Council of the Social Security Administration.

### STATEMENT OF FACTS

Alma M. McCalip is 46 years old, unmarried, and resides in the home of her mother who is now 81 years old.  She has a limited formal education, completing the 4th grade.  The premature termination of her schooling, in large part, may be attributed to numerous childhood illnesses and limited intelligence.[5]

The genesis of the plaintiff's alleged disability was in 1934, with osteomyelitis and osteoarthritis of the back and left leg, in addition to tendonitis of both feet

---

of fact or its decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.  Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision.  The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions.  Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Secretary or any vacancy in such office."

2.  The child's insurance benefits provision, 42 U.S.C.A. § 402(d) provides, *inter alia*:
"(d) (1) Every child (as defined in section 416(e) of this title) of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual, if such child—
(A) has filed application for child's insurance benefits,
(B) at the time such application was filed was unmarried and (i) either had not attained the age of 18 or was a full-time student and had not attained the age of 22, or (ii) is under a disability (as defined in section 423(d) of this title) which began before he attained the age of 18, * * *"

3.  A prior application filed on November 14, 1956, on behalf of the plaintiff by her now deceased father was denied on initial consideration.  However, no further action was taken on that application and it is not subject to review.

4.  Disability is defined in §§ 416(i) (1) and 423(d) (1) as:
"* * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."
Also see 20 C.F.R. § 404.1501 et seq.

5.  A psychological evaluation was conducted by LaVern Ells, school psychologist, on May 3, 1968.  Mr. Ells reported, in part, as follows:
"The Stanford-Binet Intelligence Scale was administered and the following results were obtained: M.A. 13-8; I.Q. 86 which would place her in the dull normal range of intellectual functioning."
Also, in November of 1941 the plaintiff, while a patient at the Nebraska Orthopedic Hospital, underwent a psychometric examination which showed that she had a less than average intelligence quotient.

and legs; these conditions, according to the plaintiff's application, prevented her from securing any employment. Other early childhood illnesses mentioned were bad tonsils and ears, temporary paralysis in the right arm and left leg, and menstrual difficulties. Since the plaintiff's claim is founded upon allegations of both physical and mental impairments in attempts to satisfy the disability requirement contained in the Social Security Act and the Code of Federal Regulations,[6] each will be given separate treatment.

A. Physical impairments.[7]

It is undisputed that the plaintiff has suffered since childhood and now suffers from diverse illnesses. However, the medical evidence relied upon by the hearing examiner is contradictory on whether the physical impairments were of sufficient severity as to render the plaintiff unable to work either before or after her 18th birthday.

Clearly, the medical evidence most favorable to the plaintiff is contained in the testimony of Dr. C. S. Griffin, an osteopath, who first examined the plaintiff in June of 1936. At that time she complained of a stiff leg and inability to move her right arm and fingers. Dr. Griffin diagnosed anemia, spinal curvature, and retardation and began osteopathic treatment for the spinal curvature and liver extraction shots for the anemia. According to Dr. Griffin, the plaintiff's response to this treatment was good, yet in his opinion the plaintiff was not physically or mentally able to work.

Further medical testimony which tends to substantiate the claim based on physical impairment was elicited from Dr. W. Ray Hill, a general practitioner, who has cared for the plaintiff since August of 1961. Dr. Hill diagnosed the plaintiff's ailments as mixed allergies, chronic sinusitis, chronic bronchitis, recurrent mild nonspecific arthritis, mild gout, and skin rashes from different allergies, and concluded that she was a "constitutionally inadequate individual."

Balanced against this favorable medical evidence is the testimony of two other doctors, both specialists, who concluded that the physical impairments were not of sufficient severity to prevent her working. On June 18, 1968, Dr. Jack M. Mathews, an internist, completed a comprehensive medical evaluation with complete history, physical examination, and laboratory work-up. Dr. Mathews observed that the plaintiff suffered from kyphosis[8] and scoliosis[9]

6. To the definition contained in 42 U.S. C.A. § 423(d) (1) (A) Congress added the following amendment in 1967:

"(A) an individual (except a widow, surviving divorced wife, or widower for purposes of section 402(e) or (f) of this title) shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C.A. § 423(d) (2) (A).

20 C.F.R. § 404.1502 provides guidelines for evaluation of disability under the child's insurance benefits provision of the Social Security Act. Moreover, § 404.-1506 states that the listing of impairment contained in the appendix for each of the major body systems may be used to gauge the proper level of severity deemed sufficient to preclude an individual from engaging in any gainful activity and the duration of the impairment.

7. See 20 C.F.R. Subpart P, App. §§ 1.00– 11.00 and 13.00.

8. Dorland's Illustrated Medical Dictionary, (23rd ed. 1957) defines kyphosis: Humpback; abnormal curvature and dorsal prominence of the vertical column.

9. Scoliosis is defined as: Abnormal curvature of the vertical column, especially a lateral curvature. Ibid., p. 1220.

which began sometime between the ages of six and twelve. As for the paralysis of the right side, it was his opinion that it began while the plaintiff was in the 3rd grade but had resolved itself four or five years later. Dr. Mathews ultimately concluded:

" * * * (T)hat the primary difficulty that the patient has relates to her back, or perhaps more specifically the cervical thoracic and lumbar spine. I am not impressed with the dorsal spine on the physical examination nor chest x-ray other than noting she has kyphoscoliosis which could cause some discomfort but not, in my opinion, be disabling within itself. * * *

* * * * * *

"In summary, this patient impresses me as being convinced that she has significant generalized and severe disability. Objectively I cannot really document this at the present time. In view of her educational background I would certainly agree that intellectually demanding jobs would certainly be out. However, it would seem that domestic work or some type of work similar could be accomplished by her."

On September 25, 1968, the plaintiff was examined by Dr. F. S. Webster, an orthopedic surgeon, who concluded:

"This woman has a structural configuration of the spind (sic) consisting of an increased dorsal kyphus and lordosis and a mild scoliosis. Very vague complaints, no specific findings. There is rather remarkable absence of any degenerative changes of significance except for a little breaking over the apex of the dorsal kyphus which would not cause any particular trouble."

B. Mental impairments.[10]

The hearing examiner's opinion concedes that at the present time the plaintiff is probably disabled because of a mental impairment, but finds nevertheless that she is not entitled to benefits because no medical evidence was adduced to indicate that her mental impairment began prior to her 18th birthday. At the hearing Dr. Fay A. Whitla, a psychiatrist, testified on behalf of the plaintiff and diagnosed her a latent schizophrenic.[11] Nonetheless, Dr. Whitla was unable to say whether her condition had developed to a chronic stage prior to her 18th birthday. Dr. Dawn Purinton, a clinical psychologist, also testified on behalf of the plaintiff to the effect that the plaintiff was psychotic, and like Dr. Whitla she testified that it was impossible to put a date on when the plaintiff became mentally unable to perform substantial gainful work.

The examiner considered the evidence bearing on the plaintiff's physical and mental impairments and concluded:

" * * * (F)rom a physical standpoint, the examiner is of the opinion that the medical evidence does not indicate that claimant has been continuously disabled.. Claimant had a number of physical problems in early childhood which interrupted her education and subsequent achievement based on it. However, at or just preceding age 18, there is no evidence to define the presence of a permanent disabling physical condition, and it appears that at the present time claimant has no physical impairment of such severity as to prevent her from performing unskilled work.

* * * * * *

"Claimant is able to stand, walk, and move about without difficulty. She drives an automobile to some extent and embroiders and crochets. At times she attends church and around the house does at least some cooking and housework. While claimant has been under treatment for various con-

10. See 20 C.F.R. Subpart P, App. § 12.00; 77 A.L.R.2d 641 (1961).

11. Dr. Whitla defined latent schizophrenia as a situation where there were symptoms of schizophrenia but no record of a psychotic episode.

ditions, the medical evidence indicates no severe impairment or combination of impairments which existed before she attained age 18 and which continued thereafter, which rendered claimant unable to work. A medical condition which may become disabling at some future time after age 18 cannot serve as a basis for qualifying under the disability provisions of the law."

## CONCLUSIONS OF LAW

In this circuit Celebrezze v. Bolas, 316 F.2d 498 (1963), has been the judicial lodestar governing the lower federal courts' inquiry in section 405(g) adjudications. Also see Celebrezze v. Sutton, 338 F.2d 417 (C.A. 8th Cir. 1964); Brasher v. Celebrezze, 340 F.2d 413 (C.A. 8th Cir. 1964); Easttam v. Secretary of Health, Education and Welfare, 364 F.2d 509 (C.A. 8th Cir. 1966).

Judge Blackmun in *Bolas* enunciated certain undisputed standards of review, including the following: the claimant has the burden of establishing her claim; findings of fact and reasonable inferences therefrom are conclusive if supported by substantial evidence; substantial evidence is more that a scintilla; and conflicts in evidence are to be resolved by the Secretary. Moreover, where, as here, there exists opposing and conflicting medical evidence as to the claimant's disability and that evidence is substantial, *Bolas* instructs:

" * * * The resolution of this conflict is what the trier of fact is for. Had this case been one tried to a jury it is obvious to us that Bolas would not have been entitled to a directed verdict and that the jury's verdict either way would have been conclusive.

Consequently, the Secretary's decision here, if it be wrong, is an error of fact and is not subject to correction by a reviewing court. * * *" 316 F.2d at 506 [12]

■ Had this matter been tried to a jury the conflicting medical evidence as to the plaintiff's physical impairment would have necessitated the overruling of the plaintiff's motion for a directed verdict, while the complete absence of medical evidence to substantiate a mental impairment commencing prior to age 18 may have resulted in a directed verdict for the defendant.

In *Lowe* the district court held that the claimant, a 45-year-old unmarried woman who was mentally retarded and had lived with her parents all her life, was held entitled to child's insurance benefits even though there was no direct medical evidence to substantiate a finding that her disability had begun prior to her 18th birthday. While *Bolas* dictates that the Social Security Act is to be construed liberally, such construction should not emasculate the claimant's burden of establishing her claim. The decision rendered in *Lowe* is made possible only by the impermissible shifting of the burden to the Secretary to *disprove* plaintiff's contention that her mental impairment predated her 18th birthday. Consequently, this court, bound by the case law developed in this circuit, must decline the invitation to accept the *Lowe* rationale.

■ Finally, the plaintiff urges that the Secretary erred in failing to demonstrate what employment opportunities exist for the claimant. Generally the Secretary is compelled to make such a finding before a claim for disability can be denied on the ground that

---

12. It is clear under 20 C.F.R. § 404.1502 that the examiner's decision to deny benefits is justifiable:

"Medical considerations alone can justify a finding that the individual is not under a disability where the only impairment is a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or a combination of slight abnormalities."

the claimant can perform substantial gainful activity. Ellerman v. Flemming, 188 F.Supp. 521 (U.S.D.C.Mo. 1960); Morris v. Ribicoff, 194 F.Supp. 841 (U.S.D.C.Ark.1961); Perkins v. Ribicoff, 201 F.Supp. 332 (U.S.D.C.Ark. 1961); Sanders v. Celebrezze, 225 F. Supp. 836 (U.S.D.C.Minn.1963); Powell v. Celebrezze, 230 F.Supp. 142 (U.S.D.C.Ark.1964). However, the applicable rule in this case is that a claim for disability benefits may be denied without showing whether the types of work which the claimant is capable of doing are available to her where the alleged physical or mental impairment is not sufficiently proved or is not so severe in degree as to limit substantially the claimant's capacity to work. Ward v. Ribicoff, 309 F.2d 157 (C.A. 6th Cir. 1962); Wright v. Celebrezze, 246 F. Supp. 330 (U.S.D.C.Tenn.1965); Stoliaroff v. Ribicoff, 198 F.Supp. 587 (U.S. D.C.N.Y.1961); Evans v. Celebrezze, 237 F.Supp. 1021 (U.S.D.C.Ky.1965); Palmer v. Celebrezze, 239 F.Supp. 655 (U.S.D.C.Ky.1965); Smith v. Gardner, 361 F.2d 822 (C.A. 6th Cir. 1966).[13]

This is an unfortunate case involving a plaintiff who presently suffers from a mental impairment that prevents her from engaging in any substantial gainful activity; yet she remains ineligible to receive child's insurance benefits because no evidence could be adduced that would support a finding that her present mental impairment antedated her 18th birthday, and the medical evidence touching upon her physical impairments was resolved against finding of a disability preceding her 18th birthday. However sympathetic this court may be to the plaintiff's present plight, such consideration cannot override the express requirements embodied in the statutory and decisional law governing eligibility for child's insurance benefits.

An appropriate order will be entered.

13. See "Social Security Act—Disability," 22 A.L.R.3rd 440 (1968), and "Social Security Act—Disability," 77 A.L.R.2d 641 (1961).