**Alma M. McCALIP, Appellant,**

v.

**Elliot L. RICHARDSON, Secretary of Health, Education and Welfare, Appellee.**

No. 71–1563.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1972.

Decided May 31, 1972.

---

Bryce Bartu, Blevens, Bartu & Blevens, Seward, Neb., for appellant.

Randall A. Rinquest, Asst. U. S. Atty., Omaha, Neb., Richard A. Dier, U. S. Atty., for the District of Nebraska, and Paul C. Cacioppo, Acting Regional Atty., Region VII, Department of Health, Education, and Welfare (Michael Romain, Asst. Reg. Atty., Dept. of Health, Education and Welfare, Kansas City, Mo., on the brief), for appellee.

Before Mr. Justice CLARK,* VOGEL and LAY, Circuit Judges.

VOGEL, Circuit Judge.

Alma M. McCalip, plaintiff-appellant, brought this action in the United States District Court for the District of Nebraska under the Social Security Act, as amended, 42 U.S.C.A. § 405(g), seeking judicial review of a decision of the Secretary of Health, Education and Welfare denying her child's insurance benefits under the Act. From a summary judgment in favor of the Secretary, plaintiff brings this appeal. The District Court's opinion granting the Secretary's motion for summary judgment is published as McCalip v. Richardson, D.C.Neb., 1971, 333 F.Supp. 1207. The crucial fact question is whether Miss McCalip has sustained her burden of proving that she is suffering from a present disability within the purview of the Act which began prior to her eighteenth birthday and has continued thereafter to the time of her application for benefits. 42 U.S.C. A. § 402(d), § 416(i), § 423(d). Concededly, the Secretary's findings of fact and the reasonable inferences drawn therefrom are conclusive and binding if supported by substantial evidence. Celebrezze v. Bolas, 8 Cir., 1963, 316 F.2d 498, 500. See, also, e. g., Vineyard v.

---

* Associate Justice of the United States Supreme Court, Retired, sitting by special designation.

Gardner, 8 Cir., 1967, 376 F.2d 1012, 1014; Brasher v. Celebrezze, 8 Cir., 1965, 340 F.2d 413, 414.

The Supreme Court, in a recent Social Security case, Richardson v. Perales, 1971, 402 U.S. 389 at page 401, 91 S.Ct. 1420, at page 1427, 28 L.Ed.2d 842, reiterated its definition of "substantial evidence":

" ' * * * [substantial evidence is] more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' · Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)."

We are convinced, after reviewing the entire file and transcript, that the Secretary's conclusion that Miss McCalip failed to meet her burden of proof is not supported by substantial evidence and that the record clearly demonstrates by a great preponderance of evidence that not only was she permanently disabled within the purview of the Act as of the date of the hearing, but that she had also been so disabled at and prior to attaining age eighteen. We reverse and direct the entry of judgment in favor of the plaintiff with a direction that attorney's fees be assessed and allowed by the District Court.

A review of the record is required. Plaintiff was born on December 28, 1924, and is accordingly approaching 48 years of age. She has never married, has always lived with her parents and been supported by them with some assistance coming from a brother, who died in 1953. Her father, upon whose earnings record this claim is predicated, died in 1960. She is presently living with her mother, who is more than eighty years old. Her application indicated, and she testified generally and specifically, to an entire lifetime of illness and disability beginning in infancy. In addition to having a curvature of the spine, she has suffered from osteomyelitis and osteoarthritis of the back and left leg, tendonitis of both feet and legs, pneumonia and anemia. She had a great deal of difficulty in school. She took the first grade twice. While in the fourth grade, which she also attempted to take twice, her doctor advised that she discontinue school. She suffered from pain in her back and paralysis of the right arm and left leg. She had trouble walking back and forth to school and often had to lie down and rest or stop in with neighbors. According to the claimant, her disability has continued up to the present time. She has had numerous hospitalizations with operations ranging from the removal of bone tumors to a total hysterectomy. For years she was confined to a back brace, apparently due to the spinal curvature. She testified that during her lifetime she has tried to work. First, she helped out in a florist shop as a saleslady for half a day several times a week. This effort forced her to spend most of the rest of her time in bed. "It was just all I could take." She did this "a half day off and on for maybe a couple of months." She finally quit at the behest of her brother, who claimed it was costing him more in doctor bills than she was earning. The next attempt at holding a job was as a driver for the County Assessor. This lasted but a short time and if she worked more than three days a week she had back trouble. Miss McCalip attempted to take an art course by correspondence, but on medical advice was forced to give it up. Claimant is able to do a little housework.

Plaintiff's claim of disability beginning prior to her eighteenth birthday and extending up to the present time was fully supported by lay witnesses who had known her and her family for many years. They included Judge Fred H. Bruns, whose cousin is married to one of claimant's sisters, Berdean Golden, a sister of claimant presently residing in Phoenix, Arizona, Zella Walsh, Lucille M. Abel, Bertha Mae Gannon, William J. Cardwell and George A. Bergantzel, all neighbors of the McCalips who have known the claimant prior to

and subsequent to her attaining age eighteen.

Mrs. Golden testified by affidavit to the effect that the claimant, because of her physical condition, did not have a normal childhood, that she could not run and play like other children, that she was unable to go to any family functions away from home or to any activity with other children for the reason that she would become ill for several days on each occasion. She stated that the claimant started school at the age of five and continued to the fourth grade, that she was absent a greater portion of the time and upon doctor's orders was taken from the school, never to return; that at that time, at the age of nine, she lost complete use of one arm and one leg; that she received chiropractic treatments therefor. She went into great detail with reference to the claimant's physical difficulties, concluding that:

"* * * Alma McCalip has never been able to secure and maintain any gainful employment; that she has sought such employment; that lack of education, diseases, illnesses and operations have resulted in disabilities of physical and mental impairments of such degree and magnitude to prevent her from engaging in gainful employment activity; that said physical and mental impairments occurred and began before she attained the age of 18, and have continued without interruption to the present time."

Zella Walsh, Lucille M. Abel, Bertha Mae Gannon, George A. Bergantzel and William J. Cardwell, neighbors of the McCalips, made similar statements in their affidavits completely supporting the foregoing.

Judge Bruns, who had been the County Assessor who had given the claimant a job as his chauffeur, had known Miss McCalip and her family for his entire life. He testified as to her general physical condition, her "very stooped and hunched position" and her various hospitalizations. He stated:

"* * * I can only find use for her as a chauffeur and then my contact was such that I felt that she did not have value to me to be able to be employable."

In answer to the question of whether or not her impairment would prevent her from engaging in any substantial gainful activity, he replied:

"I would say yes, even if we had difficulty when we were driving, because she could not sit for long periods of time. It was a difficulty for her and even a job where she would sit and answer the phone, it undoubtedly would be quite a problem."

He was asked:

"Q Now your history and knowledge of the family, etc.—in your opinion, do you feel that this impairment began when Alma was 18 years old?"

He replied:

"A Well, it's all a combination of many things over the years, but *I am sure that this started back in the days when she was a very small girl.*" (Emphasis supplied.)

Additionally:

"A My only feeling at that time was because of the physical problem that she had was the only reason. In fact, I think that it's marvelous that she got to the fourth grade."

He refused to express any opinion with reference to the claimant's mental problems.

Dr. C. S. Griffin, D.O., of Seward, Nebraska, claimant's hometown, in a report dated March 1, 1968, stated that he first saw the claimant in June 1936 when she came to him complaining of inability to move her right arm and fingers and a stiff left leg. He noted:

"She was thin, emaciated, losing weight and was anemic.

"She was given osteopathic treatment for her spinal curvature, and liver extract shots for anemia. The response was very good. Iron and vitamin therapy was given. For cystitis she responded to urised.

· "*Miss McCalip has never been employed and is not physically or mentally capable of holding a job.*" (Emphasis supplied.)

Dr. Griffin further stated that the claimant was "never able to work", that he first examined her in June 1936 and she visited him twice a week for a time thereafter. He last saw her on February 13, 1968. He reported as to the claimant:

"Thin, emanciated girl of 12 years, presenting symptoms of muscle weakness in hands and legs, doing poorly in school.

"Spinal curvature, and showing all the symptoms of malnutrition and anemia. [Apparently as of June 1936]

"In 1941 she had her bone tumors removed hoping to improve her general physical condition. (tumors on upper arm, left).

"In 1948 she came in complaining of her left arm hurting below the shoulder joint. Upon examination it was found she had bone spurs or tumors on the humerus of the left arm, in the same location as those of 1941. She was again referred for surgery.

"Over the last 20 years I have seen her only occasionally when she has had some back trouble. The last call was Feb. 13, 1968. She came in with low back pain associated with her spinal curvature."

Laboratory and special studies reported by Dr. Griffin showed in June 1936:

"Urinanalysis—albumen, puss cells, specific gravity 1020. Blood count R. B.C. 3,100,000 W.C. 6200, hemoglobin 65%. She was put on urised and at future urinanalyses the cystitis was cleared."

Dr. Griffin's diagnoses at that time were:

"1. Anemic

"2. Spinal curvature

"3. Retarded youngster."

Dr. Dawn E. Purinton, a clinical psychologist, had occasion to examine the claimant and testified at the hearing. She said that the claimant had emotional problems for a good many years; that they were chronic and of long duration; that it was unlikely that she could stand any situation which demanded any type of stress; that this included employment. In response to the question of whether or not the claimant could hold a job that would be considered a gainful type of employment, she replied:

"I would not feel, on the basis of what I've seen, that she could."

She was asked:

"Q  Do you feel that if she had a job of some type that involved any kind of responsibility or stress that this might very well develop into a fairly psychotic condition?

"A  Yes, I do. In my opinion, yes."

She stated that claimant's condition was "severe". She testified:

"Q  *  *  *  In your expert opinion, would you feel that the impairment that she has, whether physical or mental, as it might be defined, would prevent Miss McCalip from engaging in any substantial gainful activity?

"A  In my opinion, yes.

"Q  And it can be expected to continue for 12 months?

"A  At least."

Dr. Fay E. Whitla, psychiatrist, saw the claimant in January 1969, giving her a psychiatric examination. Dr. Whitla fully agreed with the conclusions of Dr. Purinton, giving his diagnosis as "schizophrenic, latent type" and stating:

"I don't think she is capable of functioning at working. I don't think she's capable of functioning alone. I think if she's put under much stress she's going to regress into a very psychosis and she may even be hospitalized before long."

Dr. Whitla believed that the claimant had been "severely disturbed for a long time". The doctor was asked:

"In your expert opinion, then, do you feel that Miss McCalip suffers

from a physical or a mental impairment that prevents her from engaging in substantial gainful employment?

"A  Yes  sir.

"Q  And do you feel that this has extended or will extend over a period of 12 months, or will continue?

"A  *I feel that it's a lifelong thing.*"  (Emphasis supplied.)

Dr. Whitla's final diagnosis was:

"My diagnosis is schizophrenia, latent type. *She has never been able to function in any situation outside the home such as in school or work.* She seems very anxious and hostile. I feel she is unable to support herself or even keep a job for more than a few days at a time because of the defects in her personality. At this time I feel she can handle her own business affairs, but later it may be necessary for her to have some supervision in this respect."  (Emphasis supplied.)

Dr. W. Ray Hill, who had cared for the claimant since 1961 for various physical difficulties, lent substantial support to the testimony of Dr. Griffin, Dr. Purinton, and Dr. Whitla, by concluding as to the claimant that:

"She is a 'constitutionally inadequate individual' which would apply since childhood."

The Examiner's report and conclusions were adopted by the Appeals Counsel and became the final decision of the Secretary. He concluded that the claimant was presently disabled because of mental impairments. No question has been raised with reference to such conclusion and from an examination of the record we find such present disability to be amply supported by the record. The Examiner, however, also stated:

" * * * the evidence does not indicate that claimant was suffering from a mental impairment at or prior to age 18 of such severity as to prevent her from engaging in some types of substantial gainful employment."

This conclusion we find to be unsupported by substantial evidence. Under the rules enunciated in *Bolas,* supra, it cannot be sustained. When all credible evidence is contrary to the Hearing Examiner's findings, those findings must be set aside. Berven v. Gardner, 8 Cir., 1969, 414 F.2d 857; Kohrs v. Flemming, 8 Cir., 1959, 272 F.2d 731.

Our review of the rather lengthy record, which we have not set forth in complete detail, indicates that the Hearing Examiner apparently relied too strongly upon his personal opinion and present medical testimony which merely speculated as to a past condition. This opinion was reached despite claimant's strong corroborating evidence in the form of lay and expert medical testimony. Cf. Sellars v. Secretary, Department of Health, Education & Welfare, 8 Cir., 1972, 458 F.2d 984. The report of Dr. Griffin, described in detail supra, indicates clearly that this physician, who had attended claimant beginning in 1936 when she was 12 years old, was of the opinion that Miss McCalip was not, and is not now, capable of being engaged in any substantial gainful employment. Dr. Griffin's report clearly establishes that claimant was disabled within the purview of the Act prior to attaining age eighteen. Cf. Murphy v. Gardner, 8 Cir., 1967, 379 F.2d 1. Additionally, we feel that the Examiner gave too little credence to corroborating lay testimony and claimant's own subjective feelings concerning her physical condition. Whitt v. Gardner, 6 Cir., 1968, 389 F.2d 906; Mode v. Celebrezze, 4 Cir., 1966, 359 F.2d 135. The testimony of the psychiatrist and the clinical psychologist, as well as that of Dr. Hill, lends additional support to the conclusion that Miss McCalip's mental difficulties are of a long-standing nature.

Our examination of this entire record convinces us that the great preponderance of the evidence supports claimant's contention that she has been disabled within the meaning of the Act, both physically and mentally, not only prior to the age of eighteen but throughout her entire lifetime. The two short periods in which she tried to work are fur-

ther support for her contention in light of the circumstances attendant to them.

The recent decisions in Orzel v. Finch, 7 Cir., 1971, 445 F.2d 150, and Lowe v. Finch, W.D.Va., 1969, 297 F.Supp. 667, buttress our conclusions involving as they do similar facts and circumstances.

This case is reversed and remanded to the District Court with directions to enter summary judgment in behalf of appellant.

The District Court is also directed to include fees for claimant's attorney in an amount equal to 25% of the total of benefits past due as of the filing date of this opinion. 42 U.S.C.A. § 406(b) (1); Marion v. Gardner, 8 Cir., 1966, 359 F. 2d 175, 182.