**Hester R. IRVIN, Plaintiff,**

v.

**David MATHEWS, Secretary of Health, Education and Welfare, Defendant.**

**No. FS–75–123–C.**

United States District Court,
W. D. Arkansas,
Fort Smith Division.

Dec. 20, 1977.

Thomas A. Daily, Daily, West, Core & Coffman, Fort Smith, Ark., for plaintiff.

Robert E. Johnson, U. S. Atty., Fort Smith, Ark., for defendant.

OPINION

JOHN E. MILLER, Senior District Judge.

On March 14, 1974, plaintiff, Hester R. Irvin, filed an application for disability insurance benefits in which he alleged that he was suffering from "bad back. Bad neck, resulting from injury and subsequent surgery", and that he became unable to work on October 1, 1962 at 41 years of age.

The application was denied initially (Tr. 61–62) and on reconsideration by the Bureau of Disability Insurance of the Social Security Administration it found upon evaluation of the evidence that plaintiff was not under a disability.

The Administrative Law Judge, before whom plaintiff and his attorney appeared, considered the case de novo, and on April 14, 1975, filed his opinion in which he discussed the facts and found that plaintiff was not under a disability starting on or before September 30, 1968, when he last had the necessary insured status (Tr. 58). The Administrative Law Judge's decision became the final decision of the Secretary

of Health, Education, and Welfare, when the Appeals Council approved the decision on July 16, 1975 (Tr. 3).

On August 14, 1975, plaintiff filed his complaint under Sections of Title 42 U.S. C.A. §§ 405(g), 416(i)(1), 423(d)(1)(A) and Title 5 U.S.C.A. § 706(2), in which he alleged:

"That the diagnosis of record of the plaintiff is as follows:

(a) Spasm and tenderness of the left trapezius muscle on pressure.

(b) Cervical and lumbar spine straight and flattened with loss of normal lordotic picture.

(c) Limited lumbar flexion motion, all performed with evidence of pain and muscle spasm of the back.

(d) Limited cervical flexion motion.

(e) Generalized diminution of deep tendon reflexes of upper and lower extremities with absent Achilles tendon reflexes bilaterally.

(f) Surgical laminectomies for herniated cervical disc and lumbar spine disease indicating resultant residuals.

"That the plaintiff has limited education and training and all of his past work experience has been limited to hard work involving stooping, lifting, walking, bending, and constant exertion; that due to his various ailments, he can no longer engage in his known occupations.

"That the finding of the defendant that the plaintiff was not disabled was not based upon substantial evidence."

On December 11, 1975, the defendant filed his answer specifically denying the allegations in paragraphs 6, 7 and 8 of the complaint.

Also, he filed as a part of the answer a certified copy of the transcript of the record, including the evidence upon which the filings and decision complained of are based, and prayed that the complaint be dismissed.

On April 9, 1976, defendant, Secretary, filed motion for summary judgment on the ground that there is no issue of fact and defendant is entitled to judgment as a matter of law.

On April 21, 1976, plaintiff filed a similar motion for summary judgment.

In his brief filed in support of the complaint and motion for summary judgment, the plaintiff stated:

"It is clear and uncontradicted that since the plaintiff's injury and surgery, his spine and neck have been severely limited in range of motion and that the plaintiff suffers substantial pain with what little motion he is capable of making  .   .   .

"Since 1962 the plaintiff has twice attempted to work. One job he attempted was a guard for a detective agency. This lasted two days and the plaintiff was finally forced to quit when he was incapable of walking with a revolver strapped around his waist. (Tr. 27). He had a more promising job in 1966 as an advisor in a small plant producing hearing aids. At page 25 of the transcript, the plaintiff describes his job:

'When I was going to Rehabilitation Center in Orlando, Florida, the rehabilitation people there were trying to find me something I could retain, and possibly learn to do. They weren't able to, and so one day, a man who had a hearing aid factory came to the office and wanted a disabled person to come to his little plant. He said he wanted to expand, and he wanted a handicapped person who would be able to sit around and think, and observe, and help him plan ways to improve his product and save costs, and that sort of thing. And I told him I wouldn't be able to do anything but talk, and he said that's all he wanted. He didn't want me to work at all.'

"The plaintiff eventually lost this job when he was required to do more physical work than just sit around and talk (buffing hearing aid cases).

"So then, we know the plaintiff's capabilities. He is able to sit, watch and talk. Obviously then he could work in some executive capacity. There is only one problem with this. The plaintiff is 56 years old with a ninth grade education

(Tr. 19). It is hard to imagine that there are executive jobs available for a 56 year old, ninth grade graduate who can sit, watch and talk and do nothing else."

In the brief submitted by defendant, Secretary, in support of his motion, he stated:

"The only issue before the court in this action is whether the final decision of the Secretary is supported by substantial evidence." [1]

At the hearing before the Administrative Law Judge, it was admitted that the plaintiff was insured under the Social Security Act until September 30, 1968, and that if at any time before September 30, 1968 he was disabled to the extent that he couldn't do any kind of work then he would have been entitled to benefits.

The plaintiff testified that he is married but has no children under 18 years of age that are living at his home; and that he and his wife are living in the home. That he was born December 6, 1919 and was on the date of the hearing 55 years old.

He had completed the 9th grade in school and served in the Navy during World War II. He took some training to learn how to repair major appliances, washing machines and dryers and that sort of thing, and was doing that kind of work at the time he was injured.

When he was in the rehabilitation center in Orlando, Florida, a man called and said he wanted to expand his business and he wanted a handicapped person who would be able to sit, think and observe and help him plan ways to improve his product and save costs. "I told him that I wouldn't be able to do anything but talk and he said that was all he wanted. He didn't want me to work at all, so I accepted the job on that basis and started in three or four months, but the expansion plans didn't work out and he began to have financial trouble so he wanted me to help out on production which I couldn't do."

The last kind of work that he was able to do was working for the Associated Radio and T.V. in Orlando, Florida and was working on an hourly basis. Before that time, he had driven motor coaches hauling passengers.

On October 1, 1962, he was moving a heavy washing machine that had become stuck on the floor and suddenly it popped loose and he sat back down. At that time, he felt pain in his neck and back and it was later determined that a disc was ruptured in his neck and one in his lower back. He underwent surgery on November 13, 1962, and since that time he had had a "lot of trouble" with his back. "My neck is painful at all times and I can't stand to move my head or use my hands. When I attempt to move my head or hands, it paralyzes and makes it feel numb, and I have been that way since 1962. My right leg is mostly affected and feels numb and painful all the time."

The plaintiff didn't recall the names of the doctors that he was sent to, but was sent to a clinic once.

His testimony further discloses that he had some difficulty with the surgeon that performed the operation and while the surgeon became hostile towards him, he later told him that the same joint where the disc was ruptured had been previously injured, which it had. "I had previously had a slipped disc there, but I had gone to a chiropractor and it had been straightened out and I returned to work for several years afterward without any pain or discomfort, and—but when he opened that up—he said he was very disgusted because of the previous condition and the whole area was nothing but a mass of knotted up nerves and ligaments".

In response to a question as to whether he had gotten worse or better, he stated:

"I don't believe there is any difference. As long as I just—just do the very least activities possible, I can get by without

1. Previously, in November 1963, May 1972 and February 1973, plaintiff filed similar applications (Tr. 6–7, 39–42, 46–49) which were denied at various administrative levels. Plaintiff did not seek judicial review of those decisions. Accordingly, the denial of these applications is not before this Court for review.

too much pain and suffering. I have some pain tablets that the V.A. doctor at Fayetteville gave me. When it gets too painful, I take some of those."

At the conclusion of the testimony, the Administrative Law Judge asked plaintiff:

"(h)ave we pretty well covered your condition, now, Mr. Irvin, as it existed back then? I can see for myself, now, that you are experiencing considerable pain, but as I mentioned at the outset, I am confined to no later than September 30, 1968. Have we pretty well covered everything after that time?"

The plaintiff answered:

"Yes, sir, that is a reasonable coverage."

As heretofore stated, the decision of the Administrative Law Judge was filed April 14, 1975. It would unduly extend this opinion to set forth in full his findings, but in his summary the record discloses:

"The claimant filed his application for the establishment of a period of disability and disability insurance benefits on March 14, 1974, alleging disability as of October 1, 1962.

"The claimant last met the special earnings requirements for disability purposes on September 30, 1968.

"The evidence in insufficient to establish that the claimant had a medically determinable physical or mental impairment, or combination thereof, which precluded him from engaging in any substantial gainful activity on or before September 30, 1968, when his eligibility for benefits ended.

"The claimant was not under a 'disability' as that term is defined in the Social Security Act, as amended, while insured under the Social Security Act.

"No new or material evidence has been submitted that would justify a reopening or revising of the prior decisions rendering in connection with the claimant's prior applications."

On July 17, 1974, the Director of Initial Claims advised plaintiff as follows:

"Dear Mr. Irvin:

"The disability application you recently filed concerns the same issues that were decided in connection with an earlier application.

"On April 17, 1974, you were notified of the reconsideration determination that your condition was not found to be disabling within the meaning of the law at any time on or before september 30, 1968, the date you last met the earnings requirement. In that notice you were advised that if you believed the decision was not correct, you could request a hearing before an Administrative Law Judge of the Bureau of Hearings and Appeals within six months.

"Our records do not show that a review of that decision was requested.

"I have examined the information furnished with your present application and find that the facts are the same as those previously considered in connection with your earlier application. Therefore, your present claim must be denied. Since the disability must exist at a time when a person meets the earnings requirement, it has not been necessary to consider whether your condition is disabling at any time after the date you last met the earnings requirement. An explanation of the disability requirement and the earnings requirement is given on the back of this notice."

In *Celebrezze v. Bolas,* (8th Cir. 1963) 316 F.2d 498, the court held that judicial review of findings of fact of the Secretary is limited to determination of whether the findings of fact are reasonable inferences drawn from them and supported by substantial evidence.

In *Richardson v. Perales,* 1971, 402 U.S. 389, at page 401, 91 S.Ct. 1420, at page 1427, 28 L.Ed.2d 842 defined substantial evidence and said that it is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

In *Bolas, supra,* the court at page 506 further stated:

"To summarize: the evidence, particularly the testimony of the four physicians, clearly created the not unusual situation of opposing and conflicting medical testimony as to the claimant's disability. There is thus substantial evidence each way and it is such as would justify whichever finding and conclusion the trier of fact made. The resolution of this conflict is what the trier of fact is for. Had this case been one tried to a jury it is obvious to us that Bolas would not have been entitled to a directed verdict and that the jury's verdict either way would have been conclusive. Consequently, the Secretary's decision here, if it be wrong, is an error of fact and is not subject to correction by a reviewing court. *Robinson v. Railroad Retirement Bd.,* 8 Cir., 1950, 184 F.2d 703, 705. We must not allow ourselves to regard an administrative agency charged with fact finding duties 'to act as a sort of special master for this court, to report testimony, to make advisory findings, and to enter an advisory judgment.' *Pendergrass v. New York Life Insurance Co.,* 8 Cir., 1950, 181 F.2d 136, 138."

See *Skeels v. Richards, Sec., etc.,* 453 F.2d 882 and *Gaultney v. Weinberger* (5th Cir. 1974) 505 F.2d 943.

In *McCalip v. Richardson, Secretary of Health, Education and Welfare,* 460 F.2d 1124 (8th Cir. 1972), the Eighth Circuit again considered and affirmed *Bolas,* and beginning at the bottom of page 1125 stated:

"Concededly, the Secretary's findings of fact and the reasonable inferences drawn therefrom are conclusive and binding if supported by substantial evidence. *Celebrezze v. Bolas,* 8 Cir., 1963, 316 F.2d 498, 500. See, also, e. g., *Vineyard v. Gardner,* 8 Cir., 1967, 376 F.2d 1012, 1014; *Brasher v. Celebrezze,* 8 Cir., 1965, 340 F.2d 413, 414.

"The Supreme Court, in a recent Social Security case, *Richardson v. Perales,* 1971, 402 U.S. 389 at page 401, 91 S.Ct. 1420, at page 1427, 28 L.Ed.2d 842, reiterated its definition of 'substantial evidence':

"' * * * [substantial evidence is] more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)."

The court has examined the record and the transcript of the proceedings and is convinced that when all of the testimony and exhibits are considered together, that the finding of the Appeals Council is based upon substantial evidence. This is not to say that there isn't some evidence that tends to support the claim of the plaintiff but since the record and transcript shows substantial evidence to support the finding and judgment of the Appeals Council, this court as is the plaintiff is bound by such finding and conclusion.

The motion of defendant filed April 9, 1976 for summary judgment should be granted and the motion of plaintiff for summary judgment filed April 21, 1976 should be denied and the complaint dismissed. Therefore, judgment in accordance with the above is being entered today.